UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER )<br>1718 Connecticut Ave., NW )<br>Suite 200 )<br>Washington, DC 20009 )<br>  )<br>    **Plaintiff,** )<br>  v.                             )    **Civil Action No. \_\_\_\_\_**<br>  )<br>FEDERAL BUREAU OF INVESTIGATION )<br>Washington, DC 20530 )<br>  )<br>    **Defendant** ) | |

**COMPLAINT FOR INJUNCTIVE RELIEF**

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2012), for injunctive and other appropriate relief, seeking the release of agency records requested by the Electronic Privacy Information Center ("EPIC") from Federal Bureau of Investigation ("FBI"), a component of the Department of Justice ("DOJ").

2. This lawsuit challenges the failure of FBI to disclose documents in response to EPIC's June 4, 2014 Freedom of Information Act request ("EPIC's FOIA Request"). EPIC's FOIA Request sought FBI Privacy Impact Assessments ("PIA"), Privacy Threshold Assessments ("PTA"), and Initial Privacy Assessments ("IPA"). EPIC asks the Court to order immediate disclosure of all responsive records.

1

**Jurisdiction and Venue**

3.     This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(A)(vii), 5 U.S.C. § 552(a)(4)(B), and 5 U.S.C. § 552(a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (2012). Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B).

**Parties**

4.     Plaintiff EPIC is a public interest research organization incorporated as a not-for-profit corporation in Washington, D.C. EPIC conducts oversight of government activities and policies and analyzes their impact on civil liberties and privacy interests. Among its other activities, EPIC publishes books, reports, and a bi-weekly electronic newsletter. EPIC also maintains two popular Internet sites, www.epic.org and www.privacy.org, which contain extensive information on current privacy issues, including documents obtained from federal agencies under the FOIA. EPIC routinely and systematically disseminates information to the public through these websites and other media outlets. This Court recognized EPIC's role as a representative of the news media in *EPIC v. Dep't of Defense,* 241 F. Supp. 2d. 5, 6 (D.D.C. 2003).

5.     Defendant FBI is a component of DOJ, which is a federal agency within the meaning of 5 U.S.C. § 552(f)(1), and is headquartered in Washington, D.C.

**Background**

6.     The E-Government Act of 2002 requires agencies to perform Privacy Impact Assessments under certain circumstances. For example, PIAs are required when "developing or procuring information technology that collects, maintains, or disseminates information that is in an identifiable form" or "initiating a new collection of information" that contains identifiable information. E-GOVERNMENT ACT OF 2002*,* PL 107-347, Dec. 17, 2002, 116 Stat. 2899 §

2

208(b)(1)(A)(i)-(ii).[1] Additionally, the PIAs are required to be made public if practicable. *Id.* at § 208(b)(1)(B)(iii).

7. The DOJ provides additional guidance to DOJ components on performing privacy assessments, including the PIAs required by the E-Government Act of 2002.

8. The DOJ's Office of Privacy and Civil Liberties ("OPCL") offers guidance detailing when agencies must write an Initial Privacy Assessment ("IPA") – previously known as a Privacy Threshold Analysis ("PTA") – a precursor to the PIA, and provides guidance on how to draft a PIA if the initial assessment requires it.

9. According to OPCL, the IPA "is a tool used to facilitate the identification of potential privacy issues; assess whether additional privacy documentation is required; and ultimately, to ensure the Department's compliance with applicable privacy laws and policies." United States Department of Justice Office of Privacy and Civil Liberties (OPCL), Initial Privacy Assessment (IPA) Instructions & Template, 1 (Mar. 2010).[2]

10. The IPA "identif[ies] privacy concerns that may necessitate changes to the system and [determines] whether additional privacy analysis and documentation are required, such as a system of records notice (SORN) or collection notice under the Privacy Act, or a Privacy Impact Assessment (PIA) under the E-Government Act." *Id.*

11. According to OPCL, the "IPA should be completed at the beginning of development of an information system, before commencement of any testing or piloting." *Id.*

12. The OPCL assesses all IPAs to determine if a PIA is needed. "Once OPCL provides a component with a determination that a PIA is required, a PIA should be conducted."

---

[1] http://www.whitehouse.gov/omb/memoranda_m03-22.
[2] http://www.justice.gov/opcl/initial-privacy-assessment.pdf.

Office of Privacy and Civil Liberties United States Department of Justice, Privacy Impact Assessments: Official Guidance, 4 (Mar. 2012).[3]

13. According to the OPCL, the PIA should be conducted during development, "with sufficient lead time to permit final Departmental approval and public website posting on or before the commencement of any system operation (including before any testing or piloting)."*Id.*

14. Even national security systems must have PIAs. It is the DOJ's "policy that PIAs must also be conducted for national security systems and submitted to OPCL for review and approval by the [Chief Privacy and Civil Liberties Officer]."*Id.*

15. DOJ documentation notes, the PIA "helps promote trust between the public and the Department by increasing transparency of the Department's systems and missions." *Id.* at 3.

16. PIAs provide an important means for the public to assess the government's efforts to protect its privacy and serve as a check against the encroachment on privacy by the government. Specifically, PIAs allow the public to see how new programs and technology the government implement affect their privacy and assess whether the government has done enough to mitigate the privacy risks.

17. The FBI has stated on the record that it has drafted several recent PIAs.

18. On July 18, 2012, the Senate Subcommittee on Privacy, Technology and the Law held a hearing on "What Facial Recognition Technology Means for Privacy and Civil Liberties."[4]

19. At that hearing, witness Jerome Pender, the Deputy Assistant Director of the Information Services Branch for Criminal Justice Information Services Division of the FBI, stated, "the 2008 Interstate Photo System PIA is currently in the process of being renewed by

---

[3] http://www.justice.gov/opcl/docs/2012-doj-pia-manual.pdf.
[4] http://www.judiciary.senate.gov/meetings/what-facial-recognition-technology-means-for-privacy-and-civil-liberties.

way of Privacy Threshold Analysis (PTA), with an emphasis on Facial Recognition. An updated PIA is planned and will address all evolutionary changes since the preparation of the 2008 IPS PIA." *Id.*

20. On June 19, 2013, the Senate Judiciary Committee held a hearing on "Oversight of the Federal Bureau Investigation."[5]

21. During that hearing, FBI Director Robert Mueller confirmed that the FBI was "in the initial stages" of developing a privacy impact assessment.[6]

22. In FOIA documents received by EPIC last year, emails from February 2012 indicate that the FBI is required to draft a PIA for its license plate reader program and make the document publicly available.[7]

23. Additionally, the emails indicated a draft PIA already existed for the license plate reader program.[8]

24. No PIAs, IPAs, or PTAs have been publicly released for any of the above programs.

25. As the DOJ itself notes, PIAs "help[] promote trust between the public and the Department by increasing transparency of the Department's systems and missions." Office of Privacy and Civil Liberties United States Department of Justice, Privacy Impact Assessments: Official Guidance, 4 (Mar. 2012).[9]

26. PIAs provide an important means for the public to assess the government's efforts to protect its privacy and serve as a check against the encroachment on privacy by the

---

[5] http://www.judiciary.senate.gov/hearings/hearing.cfm?id=36ffa9c8160f81a25730563dc7e8c551.
[6] *Id.* at 44:26.
[7] http://epic.org/foia/Emails-re-LPRs-Feb-2012.PDF.
[8] http://epic.org/foia/Emails-re-LPRs-March-2012.PDF.
[9] http://www.justice.gov/opcl/docs/2012-doj-pia-manual.pdf.

government. Specifically, PIAs allow the public to see how new programs and technology the government implement affect their privacy and assess whether the government has done enough to mitigate the privacy risks.

### EPIC's June 4, 2014 FOIA Request

27. Paragraphs 1-26 above are hereby incorporated by reference as if set forth fully herein.

28. On June 4, 2014, EPIC submitted, via email and fax, a FOIA request to the FBI's FOIA Office seeking records regarding the operations and legal basis for the program.

29. EPIC's FOIA Request asked for the following agency records:

(1) All Privacy Impact Assessments the FBI has conducted that are not publicly available at http://www.fbi.gov/foia/privacy-impact-assessments/department-of-justice-federal-bureau-of-investigation[10]; and

(2) All Privacy Threshold Analysis documents and Initial Privacy Assessments the FBI has conducted since 2007 to present.

30. In EPIC's FOIA Request, EPIC also sought "News Media" fee status as a "representative of the news media" under 5 U.S.C. § 552(a)(4)(A)(ii).

32. In EPIC's FOIA Request, EPIC further sought waiver of all duplication fees in accordance with 5 U.S.C. § 552(a)(4)(A)(iii), because disclosure of the records requested will contribute significantly to public understanding of the operations or activities of the government.

33. As of the date of the filing of this complaint, EPIC has not received any determination from the FBI.

---

[10] *See* Attachment 1.

**EPIC Has Constructively Exhausted its Administrative Remedies**

34. Paragraphs 1-33 above are hereby incorporated by reference as if set forth fully herein.

35. It has been 42 business days since EPIC's FOIA Request was received by the FBI.

36. The FBI has failed to make a determination about EPIC's FOIA Request within the twenty-day time period prescribed by 5 U.S.C. § 552(a)(6)(A)(i).

37. The FBI's failure to respond within the twenty-day statutory limit constitutes a constructive denial of EPIC's request, 5 U.S.C. § 552(a)(6)(A)(i), and exhaustion of EPIC's administrative remedies, 5 U.S.C. § 552(a)(6)(C)(i).

**Count I**

**Violation of FOIA: Failure to Comply With Statutory Deadlines**

38. Paragraphs 1-37 above are hereby incorporated by reference as if set forth fully herein.

39. As described above, Defendant FBI's failure to respond to EPIC's Request violated the statutory deadline imposed by the FOIA set forth in 5 U.S.C. § 552 (a)(6)(A)(i).

40. EPIC has exhausted the applicable administrative remedies with respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(6)(C)(i).

41. EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records

## Count II

### Violation of FOIA: Unlawful Withholding of Agency Records

42. Paragraphs 1-41 above are hereby incorporated by reference as if set forth fully herein.

43. As described above, the FBI has failed to comply with statutory deadlines and failed to make responsive records available to EPIC.

44. As a result of FBI's unlawful delay, the agency has withheld responsive agency records from EPIC in violation of FOIA, 5 U.S.C. § 552(a)(3)(A).

45. EPIC has exhausted the applicable administrative remedies with respect to EPIC's FOIA Request. 5 U.S.C. § 552(a)(6)(C)(i).

46. EPIC is entitled to injunctive relief compelling the release and disclosure of the requested agency records.

## Requested Relief

WHEREFORE, EPIC prays that this Court:

A. Order the FBI to promptly disclose to Plaintiff responsive agency records;

B. Order the FBI to file, within 20 days of the date of the Court's Order in this matter, a *Vaughn* index, and an affidavit: 1) identifying each document withheld from disclosure; 2) stating the FBI's claimed statutory exemption as to each withheld document (or portion of a document); and 3) explaining why each withheld document is exempt from disclosure;

C. Award EPIC its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

D. Grant such other relief as the Court may deem just and proper.

Respectfully submitted,

Marc Rotenberg, D.C. Bar # 422825

By: ____/s/ Ginger McCall_____
Ginger McCall, D.C. Bar # 1001104
Jeramie Scott*
ELECTRONIC PRIVACY
INFORMATION CENTER
1718 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20009
(202) 483-1140 (telephone)
(202) 483-1248 (facsimile)

Dated: August 1, 2014

*Barred in New York (N.Y. Bar # 865993)