UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

———————————————————

ELECTRONIC PRIVACY
INFORMATION CENTER,

    Plaintiff,

    v.

FEDERAL BUREAU OF
INVESTIGATION,

    Defendant.

———————————————————

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 14-1311 (APM)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT AND IN OPPOSITION TO DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

MARC ROTENBERG
EPIC President

ALAN JAY BUTLER
Senior Counsel

/s/ Jeramie D. Scott
JERAMIE D. SCOTT
D.C. BAR # 1025909
EPIC National Security Counsel
Electronic Privacy Information Center
1718 Connecticut Ave., NW
Suite 200
Washington, DC 20009

*Counsel for Plaintiff*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ............................................................................................................. 2

    I. Congress requires the FBI and other agencies to conduct privacy assessments to enable public oversight of agencies information collection practices. ........................... 2

    II. EPIC sought public disclosure of all the FBI's privacy assessments. ....................... 4

ARGUMENT ................................................................................................................... 5

    I. Standard of Review ................................................................................................. 6

    II. EPIC is entitled to partial summary judgment. ....................................................... 7

        A. The FBI is improperly withholding portions of PIAs and PTAs under Exemption 7(E). ................................................................................................. 8

    III. The FBI's motion should be denied. .................................................................... 23

        A. The FBI has not provided sufficient detail to show that the agency has disclosed all reasonably segregable portions of records. ................................... 25

        B. The FBI has not established that it conducted an adequate search for responsive records. ............................................................................................................. 26

CONCLUSION ............................................................................................................. 28

# TABLE OF AUTHORITIES

**Cases**

*ACLU v. DOJ*, ___ Fed App'x ___, 2016 WL 1657953 (D.D.C. Apr. 21, 2016)..............7

*Allard K. Lowenstein Int'l Human Rights Project v. DHS*, 626 F.3d 678 (2d Cir. 2010).18

*Am. Immigration Council v. DHS*, 950 F. Supp. 2d 221 (D.D.C. 2013) .........................24

*Blackwell v. FBI*, 646 F.3d 37 (D.C. Cir. 2011)................................................9, 10, 21, 24

*Blackwell v. FBI*, 680 F. Supp. 2d 79 (D.D.C. 2010)..........................................20, 21, 24

*Brown v. FBI*, 873 F. Supp. 2d 388 (D.D.C. 2012)....................................................8

*Charles v. Office of the Armed Forces Med. Exam'r*, 979 F. Supp. 2d 35 (D.D.C. 2013) .........................................................................................................................25, 26

*Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784 (D.C. Cir. 1980)................8

*Clemente v. FBI*, 741 F. Supp. 2d 64 (D.D.C. 2010)..................................................17

*Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854 (D.C. Cir. 1980) ................6

*Coleman v. DEA*, 134 F. Supp. 3d 294 (D.D.C. 2015)......................................................27

*Coleman v. FBI*, 13 F. Supp. 2d 75 (D.D.C. 1998) ......................................................25

*Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992) ....................................................17

*Cozen O'Connor v. Dep't of Treasury*, 570 F. Supp. 2d 749 (E.D. Pa. 2008)................10

*CREW v. DOJ*, 746 F.3d 1082 (D.C. Cir. 2014) ...........................................5, 7, 16

*Ctr. for Auto Safety v. EPA*, 731 F.2d 16 (D.C. Cir. 1984) ...........................................25

*Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83 (D.D.C. 2009) ..............6

*DOJ v. Tax Analysts*, 492 U.S. 136 (1989).....................................................................6

*Duncan v. Walker*, 533 U.S. 167 (2001) .....................................................................10

*Elkins v. FAA*, 99 F. Supp. 3d 90 (D.D.C. 2015).............................................10, 14, 15, 16

*EPIC v. DHS*, 384 F. Supp. 2d 100 (D.D.C. 2005) .........................................................6

*EPIC v. DHS*, 999 F. Supp. 2d 24 (D.D.C. 2013) ........................................................5, 6

*EPIC v. DOJ*, 511 F. Supp. 2d 56 (D.D.C. 2007) .........................................................6

*FBI v. Abramson*, 456 U.S. 615 (1982) ......................................................................16

*Freedom Watch, Inc. v. NSA*, 49 F. Supp. 3d 1 (D.D.C. 2014), *aff'd*, 783 F.3d 1340 (D.C. Cir. 2015)...........................................................................................................26

*Gilman v. DHS*, 32 F. Supp. 3d 1 (D.D.C. 2014) ..........................................................11

*Gosen v. Citizen and Immigration Serv.*, 75 F. Supp. 3d 279 (D.D.C. 2014) ....................7

*Harrison v. Fed. Bureau of Prisons*, 681 F. Supp. 2d 76 (D.D.C. 2010).........................24

*Jefferson v. DOJ, Office of Prof'l Responsibility*, 284 F.3d 172 (D.C. Cir. 2002)............16

*John Doe Agency v. John Doe Corp.*, 493 U.S. 146 (1989)................................................8

*Johnson v. EOUSA*, 310 F.3d 771 (D.C. Cir. 2002)..............................................23, 25, 26

*Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142 (D.D.C. 2012)....................................26

*Judicial Watch, Inc. v. U.S. Secret Serv.*, 579 F. Supp. 2d 182 (D.D.C. 2008)..................9

*King v. DOJ*, 830 F.2d 210 (D.C. Cir. 1987)..................................................................8

*Long v. DOJ*, 450 F. Supp. 2d 42 (D.D.C. 2006).............................................................9

*Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242 (D.C. Cir. 1977) .................26

*Milner v. Dep't of the Navy*, 562 U.S. 562 (2011) ...........................................................6

*Mobley v. CIA*, 806 F.3d 568 (D.C. Cir. 2015) ..............................................................27

*Mobley v. CIA*, 924 F. Supp. 2d 24 (D.D.C. 2013) .......................................................17

*Morley v. CIA*, 508 F.3d 1108 (D.C. Cir. 2007)............................................................27

*Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157 (2004)....................................7

*Neuman v. United States*, 70 F. Supp. 3d 416 (D.D.C. 2014) ............................................7
*Oglesby v. U.S. Dep't of Army*, 920 F.2d 57 (D.C. Cir. 1990) ..........................................27
*Oglesby v. United States Dep't of the Army*, 79 F.3d 1172 (D.C. Cir. 1996)..............25, 26
*PETA v. NIH*, 745 F.3d 535 (D.C. Cir. 2014) ......................................................................7
*Pinson v. DOJ*, No. CV 12-1872 (RC), 2016 WL 29245 (D.D.C. Jan. 4, 2016) .............28
*Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810 (D.C. Cir. 2008)...........................6
*Pub. Empls. for Envtl. Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n*,
    740 F.3d 195 (D.C. Cir. 2014).....................................................8, 10, 11, 21
*Sack v. Dep't of Def.*, ___ F.3d ___, No. 14-5029, 2016 WL 2941942 (D.C. Cir. May 20,
    2016)...............................................................................11, 12, 15, 21
*Schwartz v. DEA*, No. 13-5004, 2016 WL 154089 (E.D.N.Y. Jan. 12, 2016) ..................17
*Soghoian v. DOJ*, 885 F. Supp. 2d 62 (D.D.C. 2012) ...........................................20, 21, 25
*Stolt-Nielsen Transp. Group Ltd v. United States*, 534 F.3d 728 (D.C. Cir. 2008)...........25
*Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38 (D.D.C. 2012) .....................................24
*Symons v. Chrysler Corp. Loan Guarantee Bd.*, 670 F.2d 238 (D.C. Cir. 1981).............18
*Tax Analysts v. IRS*, 294 F.3d 71 (D.C. Cir. 2002).........................................8, 9, 11, 12, 15
*Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022 (D.C. Cir. 1999) 26
*Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973)..............................................................23

**Statutes**

E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 ..............2, 3, 12, 13, 25
Freedom of Information Act, 5 U.S.C. § 552 ........................................................................5
    5 U.S.C. § 552(a)(3)(A)................................................................................................7, 23
    5 U.S.C. § 552(a)(4)(B) ................................................................................................6, 7
    5 U.S.C. § 552(b)...............................................................................................7, 23, 25
    5 U.S.C. § 552(b)(7).................................................................................8, 10, 11, 15
    5 U.S.C. § 552(b)(7)(E)...............................................8, 10, 17, 18, 19, 21, 22, 23, 24

**Other Authorities**

DOJ, *E-Government Act of 2002* (June 18, 2014)...............................................................2
DOJ, Office of Privacy & Civil Liberties, *Initial Privacy Assessment (IPA) Instructions &
    Template* (May 2015) ..................................................................................3, 13, 15
DOJ, Office of Privacy & Civil Liberties, *Privacy Impact Assessments Official Guidance*
    (July 2015)................................................................................................3, 13, 14
DOJ, *Privacy Impact Assessment Template* (May 2015) .................................................15
FBI, *Today's FBI: Facts and Figures 2010–2011* (Tamara R. Harrison ed., 2011).........12
*Webster's Ninth New Collegiate Dictionary* (1985).........................................................18

**Rules**

Fed. R. Civ. P. 56(a) ............................................................................................................6

## PRELIMINARY STATEMENT

This case arises out of EPIC's Freedom of Information Act ("FOIA") request for Privacy Impact Assessments that the Federal Bureau of Investigation ("FBI") failed to make public. EPIC now challenges the FBI's withholdings of these records under Exemption 7(E), the FBI's failure to release reasonably segregable portions of the records, and the adequacy of the FBI's search for all responsive records.

The privacy analyses and assessments, which the FBI is required by law to conduct, enable the public to understand the privacy risks associated with the agency's collection and use of personal information. The privacy assessments require the FBI to document the steps taken to mitigate privacy risks. Congress has made clear that these documents should be available to the public. The FBI's redactions under Exemption 7(E) are entirely inconsistent with the FOIA and the E-Government Act of 2002.

The Court should deny the FBI's motion for summary judgment and order the agency to release of the redacted materials for four reasons. First, the agency cannot establish that the Privacy Impact Assessments ("PIAs") and the Privacy Threshold Analyses ("PTAs") fall within the purview of Exemption 7. Second, the agency's statements show that disclosure would not reveal nonpublic "techniques" "procedures" or "guidelines" for law enforcement investigations and prosecutions, and that disclosure could not plausibly create a "risk of circumvention of law" under Exemption 7(E). Third, the FBI's categorical descriptions of the redactions on more than 150 pages are insufficient to satisfy the agency's burden under the FOIA. Fourth, the agency has not provided sufficient evidence to show that it conducted an adequate search for responsive records.

# BACKGROUND

## I. Congress requires the FBI and other agencies to conduct privacy assessments to enable public oversight of agencies information collection practices.

Congress requires all federal government agencies to conduct privacy assessments whenever they "develop or procure new information technology involving the collection, maintenance, or dissemination of information in identifiable form or that make substantial changes to existing information technology that manages information in identifiable form." DOJ, *E-Government Act of 2002* (June 18, 2014);[1] *see* E-Government Act of 2002, Pub. L. No. 107-347, § 208, 116 Stat. 2899, 2921–23 (codified at 44 U.S.C. § 3501 note). The purpose of the E-Government Act is "to ensure sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government." *Id*. § 208(a).

A PIA is "an analysis of how information in identifiable form is collected, stored, protected, shared, and managed in an Information Technology (IT) system or online collection." Decl. of David M. Hardy ¶ 6, ECF No. 26.2 [hereinafter Hardy Decl.]. A PTA, in turn, determines whether the agency is required to prepare a PIA. *Id.* ¶ 7.[2] A PTA is "used to facilitate the identification of potential privacy issues; assess whether additional privacy documentation is required; and ultimately, to ensure the Department's compliance with applicable privacy laws and policies." DOJ, Office of Privacy & Civil

---

[1] https://www.justice.gov/opcl/e-government-act-2002.

[2] The Department of Justice uses the term "Initial Privacy Assessment ('IPA')" to describe this process whereas the FBI uses the term PTA. Hardy Decl. ¶ 7 n.3. An IPA "is the first step in a process developed by [Office of Privacy and Civil Liberties] to assist DOJ components in the development and use of information systems." DOJ, Office of Privacy & Civil Liberties, *Initial Privacy Assessment (IPA) Instructions & Template* (May 2015), https://www.justice.gov/opcl/file/629231/download.

Liberties, *Initial Privacy Assessment (IPA) Instructions & Template* (May 2015)[3] [hereinafter DOJ IPA Guidance]. A PIA is required to ensure that privacy is considered "from the beginning stages of a system's development and throughout the system's life cycle," and to ensure "that privacy protections are built into the system from the start— not after the fact." DOJ, Office of Privacy & Civil Liberties, *Privacy Impact Assessments Official Guidance* 3 (July 2015)[4] [hereinafter DOJ PIA Guidance]. A PIA is also intended to insure that "system developers and owners have made technology choices that reflect the incorporation of privacy into the fundamental system architecture." *Id.* at 4.

The agency must complete both the initial and the final agency privacy assessments prior to the implementation of an information system. *See id.* at 2; *see also* DOJ IPA Guidance, *supra*. The privacy assessments inform the public's understanding of the privacy risks associated with the agency's information systems and help "promote trust between the public and the Department by increasing transparency of the Department's systems and missions." DOJ PIA Guidance, *supra*, at 2.

For this reason, Congress intended PIAs to be made "publicly available." E-Government Act § 208(b)(1)(B)(iii). The DOJ guidance affirms that one purpose of a PIA is to "give[] the public notice" of the privacy analysis, and to "help[] promote trust between the public and the Department by increasing transparency of the Department's systems and missions." DOJ PIA Guidance, *supra*, at 4. The Department of Justice has stated that "PIAs should be clear, unambiguous, and understandable to the general public." *Id.* at 5.

---

[3] https://www.justice.gov/opcl/file/629231/download.
[4] https://www.justice.gov/opcl/file/631431/download.

**II. EPIC sought public disclosure of all the FBI's privacy assessments.**

On June 4, 2014, EPIC sent via fax a FOIA request to the FBI. Def.'s Mot.

Summ. J. ("Def.'s Mot."), Ex. A, ECF No. 26.3. In the FOIA request, EPIC sought:

1. All Privacy Impact Assessments the FBI has conducted that are not publicly available at https://www.fbi.gov/foia/privacy-impact-assessments/department-of-justice-federal-bureau-of-investigation.

2. All Privacy Threshold Analysis documents and Initial Privacy Assessments the FBI has conducted since 2007 to present.

*Id.* at 4. EPIC also sought a waiver of processing fees. *Id*. EPIC received an

acknowledgement letter dated June 17, 2014 from David M. Hardy, Section Chief,

Record/Information Dissemination Section, Records Management Division. Def.'s Mot.,

Ex. B, ECF No. 26.3. The letter stated that the FBI was searching the agency's Central

Record System for responsive documents. *Id.* Additionally, the letter indicated that

EPIC's request for fee waiver was being considered. *Id.*

EPIC filed suit after the FBI failed to make a determination within the statutory

deadline. On October 8, 2014 the FBI filed a consent motion for a stay. (ECF No. 8).

That same day the Court granted the FBI's motion for stay and ordered the agency to

"begin rolling production of documents on December 15, 2014 and complete production

by August 30, 2015." (ECF No. 9).

Beginning in December 2014 and culminating in June 2016, the FBI made

monthly rolling productions. The FBI located 2,490 pages of responsive documents.

Hardy Decl. § 24. Of the responsive documents, the FBI withheld in full 215 pages. *Id*.

The FBI produced 2,275 pages of responsive documents in whole or with redactions. *Id*.

After reviewing the production, EPIC requested a supplemental search for additional

PIAs after the agency produced numerous PTAs to EPIC that indicated a PIA was

required even though no such PIA has been made public or produced by the FBI in this case. The FBI located an additional 117 pages of responsive documents during the supplemental search but withheld all the documents in full. Def.'s Mot., Ex. O, ECF no. 26.3.

On November 2, 2015, the FBI produced to EPIC a sample *Vaughn* Index. Based on EPIC's review of the documents produced, the supplemental search, and the sample index, EPIC agreed to narrow the scope of its challenges to the sufficiency of the FBI's search for responsive records, segregability, and the redactions and documents withheld under Exemptions 5, 7(D), and 7(E). (ECF No. 23 ¶ 3). The FBI subsequently withdrew the agency's Exemption 7(D) claims. Def.'s Mot. 7, ECF No. 26. The FBI filed its Motion for Summary Judgment and the declaration of David M. Hardy on April 22, 2016. EPIC now challenges the agency's assertion of Exemption 7(E), the sufficiency of the search, and the agency's failure to release all reasonably segregable materials.[5]

## ARGUMENT

The Freedom of Information Act, 5 U.S.C. § 552, was enacted "to facilitate public access to Government documents" and "was designed to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Citizens for Responsibility and Ethics in Washington v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) [hereinafter *CREW*]. The underlying purpose of the FOIA is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed." *EPIC v. DHS*, 999 F. Supp. 2d 24, 29 (D.D.C. 2013) (quoting *John Doe Agency v. John Doe Corp.*, 493 U.S. 146, 152 (1989)). "In enacting FOIA, Congress struck the balance it thought right—

---

[5] EPIC is not challenging the agency's withholding of materials under Exemption 5.

generally favoring disclosure, subject only to a handful of specified exemptions—and did so across the length and breadth of the Federal Government." *Milner v. Dep't of the Navy*, 562 U.S. 562, 571 n.5 (2011). As a result, the FOIA "mandates a strong presumption in favor of disclosure." *EPIC v. DOJ*, 511 F. Supp. 2d 56, 64 (D.D.C. 2007) (internal citations omitted).

The FOIA specifies that certain categories of information may be exempt from disclosure, "[b]ut these limited exemptions do not obscure the basic policy that disclosure, not secrecy, is the dominant objective of the Act." *Pub. Citizen, Inc. v. Rubber Mfrs. Ass'n*, 533 F.3d 810, 813 (D.C. Cir. 2008). Therefore FOIA exemptions "must be narrowly construed." *Id.* "The statute's goal is broad disclosure, and the exemptions must be given a narrow compass." *Milner*, 562 U.S. at 563 (internal citations omitted). Furthermore, "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *see also EPIC v. DHS*, 384 F. Supp. 2d 100, 106 (D.D.C. 2005). Where the government has not carried this burden, summary judgment in favor of the Plaintiff is appropriate. *DOJ v. Tax Analysts*, 492 U.S. 136, 142 (1989); *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 861 (D.C. Cir. 1980).

**I. Standard of Review**

Summary judgment may be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact is one that would change the outcome of the litigation." *EPIC v. DHS*, 999 F. Supp. 2d 24, 28 (D.D.C. 2013). FOIA cases are typically decided on motions for summary judgment. *Id.*; *see Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 87 (D.D.C. 2009). A district court reviewing a motion for summary judgment in a FOIA case "conducts a de novo review of

the record, and the responding federal agency bears the burden of proving that it has complied with its obligations under the FOIA." *Neuman v. United States*, 70 F. Supp. 3d 416, 421 (D.D.C. 2014); *CREW*, 746 F.3d at 1088; *see also* 5 U.S.C. § 552(a)(4)(B).

The court must "analyze all underlying facts and inferences in the light most favorable to the FOIA requester," and therefore "summary judgment for an agency is only appropriate after the agency proves that it has 'fully discharged its [FOIA] obligations.'" *Neuman*, 70 F. Supp. 3d at 421. In some cases, the agency may carry its burden by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor evidence of agency bad faith." *ACLU v. DOJ*, ___ Fed App'x ___, 2016 WL 1657953, at *1 (D.C. Cir. Apr. 21, 2016).

## II. EPIC is entitled to partial summary judgment.

The FOIA provides that every government agency shall "upon any request which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). Despite the general "prodisclosure purpose" of the statute, *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004), the FOIA provides for nine exemptions. These exemptions outline "specified circumstances under which disclosure is not required." *Gosen v. Citizen and Immigration Serv.*, 75 F. Supp. 3d 279, 286 (D.D.C. 2014); *see* 5 U.S.C. § 552(b).

In a FOIA case, the "agency bears the burden of establishing that an exemption applies." *PETA v. NIH*, 745 F.3d 535 (D.C. Cir. 2014). The agency may "meet this burden by filing affidavits describing the material withheld and the manner in which it

falls within the exemption claimed." *King v. DOJ*, 830 F.2d 210, 217 (D.C. Cir. 1987).

However, it is not sufficient for the agency to provide "vague, conclusory affidavits, or

those that merely paraphrase the words of a statute." *Church of Scientology of Cal., Inc.

v. Turner*, 662 F.2d 784, 787 (D.C. Cir. 1980) (per curiam). When an agency invokes an

exemption, "it must submit affidavits that provide the kind of detailed, scrupulous

description [of the withheld documents] that enables a District Court judge to perform a

de novo review." *Brown v. FBI*, 873 F. Supp. 2d 388, 401 (D.D.C. 2012) (internal

quotation marks omitted).

### A. The FBI is improperly withholding portions of PIAs and PTAs under Exemption 7(E).

An agency seeking to withhold records under Exemption 7(E) must establish

three elements. First, the agency must show that the record was "compiled for law

enforcement purposes." 5 U.S.C. § 552(b)(7); *see John Doe Agency v. John Doe Corp*.,

493 U.S. 146, 153 (1989) ("Before it may invoke [Exemption 7], the Government has the

burden of proving the existence of such a compilation for such a purpose."); *Pub. Empls.

for Envtl. Responsibility v. U.S. Section, Int'l Boundary and Water Comm'n*, 740 F.3d

195, 202-203 (D.C. Cir. 2014) [hereinafter *PEER*]. The D.C. Circuit refers to this as "the

threshold requirement of Exemption 7." *Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir.

2002). Second, the agency must satisfy the specific subject-matter test of Exemption 7(E)

by showing that disclosure of the record would reveal "techniques and procedures for law

enforcement investigations or prosecutions, or guidelines for law enforcement

investigations or prosecutions." 5 U.S.C. § 552(b)(7)(E); *see PEER*, 740 F.3d at 204.

Finally, the agency must show that disclosure "could reasonably be expected to risk

circumvention of the law." *Id.*

These elements require different showings. *See, e.g.*, *Blackwell v. FBI*, 646 F.3d 37, 40-42 (D.C. Cir. 2011) (analyzing first whether FBI files regarding the requester's prosecution were compiled for a law enforcement purpose, then whether their disclosure would reveal techniques or procedures for investigations or prosecutions). In particular, the threshold requirement of a law enforcement "purpose" is broader than the requirement that disclosure reveal "techniques and procedures for law enforcement investigations or prosecutions." *See Tax Analysts*, 294 F.3d at 79 (noting that in 1986 Congress broadened Exemption 7's threshold requirement by "deleting any requirement that the information be 'investigatory'").

Congress made clear that Subsection (E) is narrower, and requires a more specific proof of harm, than the Exemption 7 threshold. Indeed, many records that meet the "law enforcement purposes" requirement fail to meet the "techniques and procedures" requirement. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Secret Serv.*, 579 F. Supp. 2d 182, 187–88 (D.D.C. 2008) ("The Court agrees with defendant that [Sensitive Security Record]s are compiled for law enforcement purposes. However, the Court cannot see how disclosure of the information plaintiff seeks would reveal techniques, procedures, or guidelines used by the Secret Service.").

The agency cannot rely on Exemption 7(E) unless it can identify a "law enforcement technique or procedure that would be disclosed upon release of the information." *Long v. DOJ*, 450 F. Supp. 2d 42, 79 (D.D.C. 2006) (finding that certain program category fields from databases of criminal investigations were not exempt under 7(E)). It is not sufficient that the records in question disclose "techniques and procedures," or even that they disclose "techniques and procedures" related to "law

enforcement purposes." Rather, the agency must demonstrate that disclosure of records would reveal nonpublic "techniques and procedures *for law enforcement investigations or prosecutions.*" 5 U.S.C. § 552(b)(7)(E) (emphasis added); *see also Duncan v. Walker*, 533 U.S. 167, 174 (2001) ("It is our duty to give effect, if possible, to every clause and word of a statute.") (quotation marks omitted); *Cozen O'Connor v. Dep't of Treasury*, 570 F. Supp. 2d 749, 785 (E.D. Pa. 2008) ("[Exemption 7(E)] is construed literally."). The agency also bears the burden of demonstrating "logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011).

Because the FBI has not shown that the four categories of redacted materials at issue in this case meet any of the three elements of Exemption 7(E), the Court should grant EPIC's Motion and order release of the records.

**1. The PIAs and PTAs were not compiled for law enforcement purposes.**

The FBI cannot properly withhold portions of the PIAs and PTAs under Exemption 7(E) because the reports were compiled to facilitate agency compliance with privacy and transparency laws, not for "law enforcement purposes." The term "compiled" in Exemption 7 means that a document must be "created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *PEER*, 740 F.3d at 203 (citing *John Doe Agency*, 493 U.S. at 155). The D.C. Circuit has made clear that "it is not the nature of the agency that controls, but the character of the records withheld." *Elkins v. FAA*, 99 F. Supp. 3d 90, 98 (D.D.C. 2015). "Under the text of Exemption 7, the withheld record must have been compiled for law enforcement

*purposes*; the withholding agency need not have statutory law enforcement *functions*."
*PEER*, 740 F.3d at 203.

The term "law enforcement" in Exemption 7 "refers to the act of enforcing the
law, both civil and criminal." *Id.* Law enforcement also encompasses "proactive steps
designed to prevent criminal activity and to maintain security." *Sack v. Dep't of Def.*, ___
F.3d ___, No. 14-5039, 2016 WL 2941942, at *6 (D.C. Cir. May 20, 2016) (internal
quotation marks omitted). The D.C. Circuit has adopted a two-part test to identify law
enforcement records: (1) The "investigatory activity that gave rise to the documents"
must be "related to the enforcement of federal laws," and (2) there must be "a rational
nexus between the investigation at issue and the agency's law enforcement duties." *Tax
Analysts v. IRS*, 294 F.3d 71, 78 (D.C. Cir. 2002) (internal quotation marks omitted);
*accord Gilman v. DHS*, 32 F. Supp. 3d 1, 18 (D.D.C. 2014). The remaining disputed
records in this case do not meet either part of the test.

The FBI appears to argue that the PIAs and PTAs were compiled for law
enforcement purposes simply because the FBI is a law enforcement agency with a law
enforcement mission. Hardy Decl. ¶ 33. This conclusion misses the mark for several
reasons. First, not every component of the FBI engages in investigatory law enforcement
activity. PIAs and PTAs are coordinated, facilitated, approved,[6] and issued by the FBI's
Office of General Counsel, Privacy and Civil Liberties Unit ("PCLU") and its Privacy
and Civil Liberties Officer. *Id.* ¶ 23. The PCLU and its officers do not engage in law
enforcement investigations. Instead, the PCLU "provides legal advice on privacy and

---

[6] The FBI's Privacy and Civil Liberties Officer approves all PTAs and conditionally
approves all PIAs. Hardy Decl. ¶ 23. The DOJ's Chief Privacy and Civil Liberties Officer
gives final approval to all PIAs. *Id.*

civil liberties matters across all FBI investigative and intelligence collection programs and exercises a central role in the FBI's privacy/civil liberties compliance efforts." FBI, *Today's FBI: Facts and Figures 2010–2011*, at 56 (Tamara R. Harrison ed., 2011). The Privacy and Civil Liberties Officer "assists in developing and evaluating legislative, regulatory, and other policy proposals that implicate privacy issues," and "oversees, coordinates, and facilitates agency privacy compliance with laws, regulations, and policies relating to information privacy." Hardy Decl. ¶ 23. None of PCLU's functions involve "investigatory activities" that are "related to the enforcement of federal law." *Tax Analysts*, 294 F.3d at 78. The PIAs and PTAs they approve and issue likewise cannot be and are not investigatory records.

Second, the PIAs and PTAs requested by EPIC were not created by "investigatory activity" related to the enforcement of civil or criminal law. *Id.*; *Sack*, 2016 WL 2941942, at *6. Instead, PIAs and PTAs are created to protect individual privacy. Congress expressly stated that the purpose for mandating PIAs "is to ensure sufficient protections for the privacy of personal information as agencies implement citizen-centered electronic Government." E-Government Act § 208(a) Congress did not mention any law enforcement or investigatory purpose for these E-Government Act requirements.

As characterized by the FBI itself, "the purpose of the PIA" is to "analyze how an agency handles information in order to: 1) ensure that handling conforms to applicable legal, regulatory, and policy requirements regarding privacy; 2) determine the risks and effects of collecting, maintaining, and disseminating information; and 3) examine and evaluate protections and alternative processes for handling information to mitigate

12

potential privacy risks." Hardy Decl. ¶ 6. In other words, the purposes for compiling a

PIA are exclusively related to protecting individual privacy—not law enforcement.

The DOJ's Official Guidance on PIAs and Initial Privacy Assessments ("IPAs")

bolsters this conclusion. An IPA "is a tool used to facilitate the identification of potential

privacy issues; assess whether additional privacy documentation is required; and

ultimately, to ensure the Department's compliance with applicable privacy laws and

policies." DOJ IPA Guidance, *supra*. A PIA "demonstrates that the Department considers

privacy from the beginning stages of a system's development and throughout the

system's life cycle," and "ensures that privacy protections are built into the system from

the start—not after the fact." DOJ PIA Guidance, *supra*. A PIA also "demonstrates that

the system developers and owners have made technology choices that reflect the

incorporation of privacy into the fundamental system architecture." *Id.* at 4.

In addition, and unlike law enforcement records, Congress intended PIAs to be

made "publicly available." E-Government Act § 208(b)(1)(B)(iii). The DOJ guidance

affirms that one purpose of a PIA is to "give[] the public notice" of the privacy analysis,

and to "help[] promote trust between the public and the Department by increasing

transparency of the Department's systems and missions." DOJ PIA Guidance, *supra*, at 4.

"PIAs should be clear, unambiguous, and understandable to the general public." *Id.* at 5.

That federal agencies can refrain from publishing certain PIAs or parts of PIAs for

security reasons, *id.* at 7; E-Government Act § 208(b)(1)(C), does not transform them

into records compiled for law enforcement *purposes*.

Courts in the D.C. Circuit have rejected prior claims that because an agency

conducts law enforcement investigations all of their records necessarily fall within

Exemption 7. *See Elkins*, 99 F. Supp. 3d at 98–99 (denying the FAA's claims that call signs and flight tracking records were created with law enforcement purposes). The court in *Elkins* correctly observed that where records were "transmitted to the FAA as a matter of course when flying in regulated airspace" and to track the airspace, they were not compiled for law enforcement purposes even though the FAA is a law enforcement agency. *Id.* at 99. Like the FAA's flight records, the PIAs and PTAs "contain no information intended to assist law-enforcement personnel in maintaining order and security." *Id.* Instead, the FBI creates its PTAs and PIAs to comply with privacy laws, and to assess and mitigate the privacy risks of electronic information systems. DOJ PIA Guidance, *supra*, at 3.

Even the FBI admits that it does not treat PIAs and PTAs as investigatory records. The Hardy Declaration notes that when responding to EPIC's FOIA request, the FBI deviated from its "standard search protocol," which involves the agency searching the indices of its Central Records System ("CRS"). Hardy Decl. ¶ 22. "The CRS is indexed in a manner that meets the FBI's investigative needs and priorities, and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties." *Id.* ¶ 22 n.8. After reviewing EPIC's FOIA request, however, "the FBI determined that the records EPIC requested concerning FBI PIAs and PTAs are not reflective of the manner in which FBI investigative records are indexed." *Id.* ¶ 22.

Instead, the FBI decided to conduct a targeted search by directing EPIC's request to the PCLU, "the unit reasonably likely to maintain responsive material for EPIC's request." *Id.* ¶ 23. The FBI concedes that "[a]s applicable here, there is no indication from the information located as the result of the targeted search efforts by the PCLU to

conclude that responsive material would reside in any other FBI system or location." *Id.*

In other words, the PIAs and PTAs were not located in or searchable from the indices of

the CRS—indices that meet "the FBI's investigative needs and priorities." *Id.* ¶ 22 n.8.

The FBI rightly does not attempt to argue in the alternative that it subsequently

gathered and used the PIAs and PTAs for law enforcement purposes, "even if the

information was generated on an earlier occasion and for a different purpose." *Elkins*, 99

F. Supp. 3d at 100 (internal citations and quotation marks omitted). A PIA or PTA, which

contains information about the privacy impact of information systems generally, would

be of no use in a law enforcement investigation targeted at enforcing federal laws.

Nor does the FBI attempt to argue that the information *contained in* the PIAs and

PTAs was compiled for a law enforcement purpose. PIAs describe the information

system, list what information is collected and from whom, detail why the information is

collected and with whom it will be shared, analyze the associated privacy risks and

mitigations, and summarize the information security protocols. DOJ, *Privacy Impact*

*Assessment Template* (May 2015).[7] PTAs provide only checklist-based answers to basic

questions about the information system. DOJ IPA Guidance, *supra*. The contents of PIAs

and PTAs are not "designed to prevent criminal activity and to maintain security," *Sack*,

2016 WL 2941942, at *6, nor to document "investigatory activity" that is "related to the

enforcement of federal laws," *Tax Analysts*, 294 F.3d at 78.

But even if the contents of the PIAs and PTAs were compiled for law

enforcement purposes, the text of the FOIA clearly states that Exemption 7 applies to

*records*, not information, compiled for law enforcement purposes. *See FBI v. Abramson*,

---

[7] https://www.justice.gov/file/dojpiatemplatemay2015pdf/download.

456 U.S. 615, 632 (1982) (Blackmun, J., dissenting) ("I cannot escape the conclusion that

the Court has simply substituted the word 'information' for the word 'records' in

Exemption 7(C). Yet we have earlier recognized that '[t]he Freedom of Information Act

deals with "agency records," not information in the abstract.'" *Id.* (quoting *Forsham v.*

*Harris*, 445 U.S. 169, 185 (1980))).

Finally, the FBI's declaration lacks the "reasonably specific detail" required to

carry the government's burden of establishing that these records were compiled for law

enforcement purposes. *CREW v. DOJ*, 746 F.3d 1082, 1088 (D.C. Cir. 2014) (internal

quotation marks omitted). To determine whether records were compiled for law

enforcement purposes, an agency must provide a clear explanation of "how and under

what circumstances the requested files were compiled" and "whether the files sought

relate to anything that can fairly be characterized as an enforcement proceeding."

*Jefferson v. DOJ, Office of Prof'l Responsibility*, 284 F.3d 172, 176–77 (D.C. Cir. 2002)

(internal quotation marks omitted).

The FBI's explanation does not meet this standard. Instead, the agency provides

"nothing more than a restatement of the standards governing the withholding of the

information." *Elkins*, 99 F. Supp. 3d at 99. The FBI states that it is "the primary

investigative agency of the federal government" and that the "pertinent records were

compiled or created in furtherance of FBI's law enforcement, national security, and

intelligence missions." Def.'s Mot. 14–15. But the FBI has provided "no information as

to *what* law-enforcement purpose the [PIAs and PTAs] were created for, which is the key

question in the first requirement of Exemption 7." *Elkins*, 99 F. Supp. 3d at 99. Instead,

the FBI recites a generic, two-sentence summary of its broad law enforcement

techniques, and then asserts without more that this substantiates a nexus between "the FBI's law enforcement responsibilities and these responsive records." Def.'s Mot. 15. To accept the FBI's justification would require the Court to take it for granted that all of the records created by the FBI automatically meet the "law enforcement purposes" requirement.

The FBI has failed to carry its burden of establishing that the PIAs and PTAs were compiled for a law enforcement purpose.

### 2. Exemption 7(E) does not cover mere logistical details such as FBI system and database names or the identities of agency units, contractors.

An agency that meets the Exemption 7 threshold requirement must also satisfy the additional requirements of 7(E). The statute requires that disclosure of the record would reveal "techniques" "procedures" or "guidelines" that are not known to the public. *Mobley v. CIA*, 924 F. Supp. 2d 24, 63 (D.D.C. 2013). "Exemption 7(E) is not concerned with mere 'logistical details.'" *Clemente v. FBI*, 741 F. Supp. 2d 64, 88 (D.D.C. 2010). The agency also cannot satisfy the burden under Exemption 7(E) with "vaguely worded categorical description[s]" that do not make clear how a specific technique or procedure would be revealed. *Id*. What the agency must show in order to justify an Exemption 7(E) claim is that "the effect of producing the information" will be to reveal "previously unknown 'techniques or procedures.'" *Schwartz v. DEA*, No. 13-5004, 2016 WL 154089, at *10 (E.D.N.Y. Jan. 12, 2016).

None of the FOIA's "other important interpretive principles" exempt it from the "cardinal canon" of statutory interpretation: that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). Even in the FOIA context, "proper

deference must be paid to the plain meaning rule." *Symons v. Chrysler Corp. Loan Guarantee Bd.*, 670 F.2d 238, 241 (D.C. Cir. 1981). A "procedure" is "a particular way of accomplishing something or of acting," a "technique" is "a method of accomplishing a desired aim," and a "guideline" is "an indication or outline (as by a government) of policy or conduct." *Webster's Ninth New Collegiate Dictionary*, 937, 1211 (1985) (definitions contemporaneous with the enactment of amendments to Exemption 7). A "technique" is "a technical method of accomplishing a desired aim," and a "procedure" is "a particular way of doing or of going about the accomplishment of something." *Allard K. Lowenstein Int'l Human Rights Project v. DHS*, 626 F.3d 678, 682 (2d Cir. 2010) (quoting Webster's Third New Int'l Dictionary (1986)).

The FBI is withholding material from more than 160 pages of the responsive PIAs and PTAs in this case.[8] *See* Ex. 1. The agency argues that these materials are subject to Exemption 7(E) because they fit into four broadly defined categories. Def.'s Mot. 6–7; Hardy Decl. ¶ 26. But the categorical descriptions of these materials are too vague and conclusory to support the agency's exemption claim, and the FBI's own descriptions make clear that disclosure would not reveal non-public techniques or procedures used for law enforcement investigations. In particular, the FBI has withheld at least four specific subcategories of information related to agency systems that, if disclosed, could not plausibly reveal the details of investigative techniques or procedures.

---

[8] The FBI has only identified challenged Exemption 7(E) redactions on pages within the 500 page sample. The FBI is also withholding four pages in full under Exemption 7(E). The agency declaration states that Bates pages EPIC-219 through EPIC-233 include information withheld under Exemption (b)(7)(E)-2 (Hardy Decl. ¶ 38 n.11) but the agency Exhibit P states that the contested pages in that range are actually EPIC-217, EPIC-219 through EPIC-222 and EPIC-227 through EPIC-233.

First, the FBI is withholding the "terminology" used to refer to the systems that the agency was required under federal privacy law to analyze in the PIAs and PTAs. *See* Def.'s Mot. 17; Hardy Decl. ¶ 38; Ex. 1 at 3, 35–66, 68, 70, 74–78, 87–88, 94–98, 101–105, 108, 119, 122, 127–135, 138, 145, 155–163.[9] Contrary to the FBI's assertion, these terms are not "multi-faceted" nor would their disclosure provide "key details on the development, use, capabilities, limitations and vulnerabilities" of agency techniques or procedures. Def.'s Mot. 17–18; Hardy Decl. ¶ 38. The terms are nothing more than the names of agency information systems. The agency does not cite any case that supports the proposition that the name of a government system can be exempt from disclosure under the FOIA. Such details are certainly not within the purview of Exemption 7(E).

Second, the FBI is withholding "descriptions of database structures and program interface tools used in the development" of agency systems as well as certain "data transmission pathways" "protocols" and other "program interface tools." Def.'s Mot. 19; Hardy Decl. ¶ 39. All technical jargon aside, the agency does not even argue that disclosure of such information could reveal "techniques and procedures for law enforcement investigations and prosecutions." Def.'s Mot. 19; Hardy Decl. ¶ 39. The identifications and configurations of the agency's databases are not themselves "techniques" or "procedures" and there is no evidence to show that such details would anything about investigative techniques or procedures. The only case that the FBI cites in support of this claim is easily distinguishable. In *Blackwell*, the court upheld an agency's

---

[9] Bates numbers EPIC-2, EPIC-217, EPIC-219 through EPIC-222, EPIC-227 through EPIC-233, EPIC-252 through EPIC-257, EPIC-372 through EPIC-378, EPIC-379 through EPIC-385, EPIC-504, EPIC-563, EPIC-587 through EPIC-592, EPIC-717 through EPIC-718, EPIC-811 through EPIC-814, EPIC-834, EPIC-866 through EPIC-870, EPIC-928, EPIC-1349, EPIC-1497, EPIC-1562 through EPIC-1569, EPIC-1712, EPIC-1927, EPIC-2217 through EPIC-2219, EPIC-2258 through EPIC-2263.

withholding of specific procedures for computer forensic examinations where the plaintiffs had requested information about a specific investigation. *Blackwell v. FBI*, 680 F. Supp. 2d 79, 86–87, 92 (D.D.C. 2010). The agency has not identified any forensic protocol or other technique that would be revealed if the redacted materials in this case were disclosed.

Third, the FBI is withholding the identities of "FBI units, and or joint units, partners (e.g., federal contractors) participating in program and system development, and system testing." Def.'s Mot. 20; Hardy Decl. ¶ 40. The agency cannot support the conclusion that this identifying information would reveal "techniques or procedures." Instead the FBI argues that such information would reveal "the location" of agency units. Def.'s Mot. 20; Hardy Decl. ¶ 40. These descriptions are so vague and conclusory that they defy all meaningful analysis and such claims cannot support the agency's withholding under Exemption 7(E). Furthermore, the FBI's reliance on *Blackwell* and *Soghoian v. DOJ*, 885 F. Supp. 2d 62 (D.D.C. 2012), is entirely misplaced. Those cases concerned the records that would have reveal the underlying *methods and limitations* of law enforcement's surveillance activities. *See Blackwell*, 680 F. Supp. 2d at 92 (concerning methods of data collection); *Soghoian*, 885 F. Supp. 2d at 74–75 (concerning methods of cell phone surveillance). Nothing in those cases supports the conclusion that disclosure of the identities of FBI's own components and contractors would reveal techniques or procedures.

Finally, the FBI is withholding information about how the agency's systems operate, including "software and hardware specifications, system infrastructure, and security protocols used to operate and maintain" the systems. Def.'s Mot. 21; Hardy

Decl. ¶ 41. These technical details about the agency's internal computer systems are far removed from the type of investigative techniques and procedures that can be withheld under Exemption 7(E). The agency again does not offer any evidence or explanation as to how disclosure of these details would reveal techniques or procedures. Instead, the agency merely states the conclusion and cites again to *Blackwell* and *Soghoian*, which are easily distinguishable.

The FBI's declaration, *Vaughn* index, exhibits, and memorandum of law offer no evidence to support the agency's claim that either techniques, procedures, or guidelines for law enforcement investigations and prosecutions would be revealed by the disclosure of the redacted materials discussed above. Therefore, the Court should grant EPIC's motion for summary judgment as to these withholdings.

### 3. Exemption 7(E) does not permit the FBI to withhold names of systems or other records whose disclosure could not logically risk circumvention of law.

Exemption 7(E) permits an agency to withhold documents only if "disclosure could *reasonably* be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E) (emphasis added). The D.C. Circuit applies the "risk circumvention of the law" requirement to both "guidelines" and "techniques and procedures." *Sack v. Dep't of Defense*, ___ F.3d ___, No. 14-5029, 2016 WL 2941942 at *13 (D.C. Cir. May 20, 2016); *PEER*, 740 F.3d at 205 n.4. The agency bears the burden of demonstrating "logically how the release of the requested information might create a risk of circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). This requires a "relatively detailed justification" that permits the reviewing court to make a meaningful assessment of the proposed withholdings. *Blackwell*, 646 F.3d at 42.

The FBI's declaration is vague and conclusory, and does not include the level of detail necessary to meet the agency's burden under Exemption 7(E). Furthermore, the agency has failed to "demonstrate logically" how the release of the withheld portions of the PIAs and PTAs could reasonably risk circumvention of the law. Instead, the agency makes numerous dubious claims about the potential risks associated with disclosure. The agency claims that potential risks to the security of FBI computer systems, unrelated to any risk of "circumvention of law," justify the assertion of Exemption 7(E). Def.'s Mot. 19–21; Hardy Decl. ¶¶ 39–41.

The agency also claims, for example, that disclosure of "FBI terminology" and "definitions" would give bad actors a "virtual 'playbook'" on how to "avoid detection." Hardy Decl. ¶ 38. Yet the agency provides no plausible explanation for how simple names of agency systems could enable someone to circumvent the law. Under this reasoning, the agency, for example, redacts the following sentence:

> One technique that is used for both national security and criminal investigations is the [REDACTED] in accordance with constitutional and statutory safeguards.

Ex. 1 at 3; *see also, id.* at 35–66, 68, 70, 74–78, 87–88, 94–98, 101–105, 108, 119, 122, 127–135, 138, 145, 155–163 (withholding names of agency systems and projects). While the bar to claim "risk of circumvention" is relatively low, the FBI's claim must be supported by a logical demonstration. The agency has not met that burden here.

The FBI also attempts to obscure unsupported assertions under a mountain of jargon. The agency claims that disclosure of information concerning "data transmission pathways," "access portals," and "operational directives and integrity protocols" would allow bad actors to "access – and tamper with – [FBI] systems without detection." Hardy

Decl. ¶ 39. But the agency fails to explain any of these technical terms or how their disclosure could possibly lead to a circumvention of law. Similarly, agency makes the implausible argument that disclosure of "office locations and units, and operational partners" would present similar security risks. *Id.* ¶ 40. But without any logical demonstration of how disclosure of such information would pose new risks of circumvention of law, the Court has no basis to meaningfully assess the agency's Exemption 7(E) claim.

## III. The FBI's motion should be denied.

The FOIA requires that "each agency, upon any request for records which (i) reasonably describes such records and (ii) is made in accordance with published rules . . . shall make the records promptly available to any person." 5 U.S.C. § 552(a)(3)(A). However, an agency may withhold information if it fits within nine narrowly construed exemptions. *See* 5 U.S.C. § 552(b). But the FOIA also requires that the agency release any "reasonably segregable portion" of the records requested. *Id.* The agency in a FOIA case bears the burden of establishing that at least one exemption applies for each record withheld. See *Vaughn v. Rosen*, 484 F.2d 820, 823 (D.C. Cir. 1973). The agency also bears the burden of proving that it has complied with the segregability requirement. *Johnson*, 310 F.3d at 776.

An agency seeking to justify its withholding of responsive records under the FOIA must satisfy five overarching requirements in addition to the particular standards of each FOIA exemption claimed.

> The government must "(1) [I]dentify the document, by type and location in the body of documents requested; (2) note that [a particular exemption] is claimed; (3) describe the document withheld or any redacted portion thereof, disclosing as much information as possible without thwarting the exemption's purpose; (4) explain how this material falls within one or

> more of the categories . . .; and [if the exemption requires a showing of
> harm] (5) explain how disclosure of the material in question would cause
> the requisite degree of harm."

*Am. Immigration Council v. DHS*, 950 F. Supp. 2d 221, 235 (D.D.C. 2013). In order to be

granted summary judgment, the agency must establish that it has satisfied all of the

statutory requirements of the FOIA. *Harrison v. Fed. Bureau of Prisons*, 681 F. Supp. 2d

76, 85 (D.D.C. 2010).

In this case, FBI has withheld thousands pages of responsive records in whole or

in part. Of these records, EPIC challenges the agency's withholding under only

Exemption 7(E). For the reasons discussed above, the FBI has failed to satisfy its burden

to establish Exemption 7(E) justifies the withholding of the privacy assessments.

In order to properly invoke Exemption 7(E), an agency must "demonstrate

logically how the release of the requested information might create a risk of

circumvention of the law." *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011). An

agency must also provide a "relatively detailed justification" for each record that permits

the reviewing court to make a meaningful assessment of the redactions and to understand

how disclosure would create a reasonably expected risk of circumvention of the law.

*Strunk v. U.S. Dep't of State*, 845 F. Supp. 2d 38, 47 (D.D.C. 2012). The agency

declaration in this case is not sufficient to establish that all responsive, non-exempt

records have been disclosed as required under the FOIA.

Unlike the cases on which the FBI relies, this case does not involve details of

forensic examination procedures used on computers or the "manner in which ChoicePoint

data is searched, organized, and reported to the FBI . . . .", *Blackwell v. FBI*, 680 F. Supp.

2d 79, 92 (D.C.C. 2010); details of a polygraph examination or the personality profiles

used to identify common threads in different cases, *Coleman v. FBI*, 13 F. Supp. 2d 75,

83 (D.D.C. 1998); or the advice or guidance regarding electronic surveillance techniques

given in the context of a particular investigation, *Soghoian v. DOJ*, 885 F. Supp. 2d 62,

75 (D.D.C. 2012).

This case is about privacy assessments and analysis required by the E-

Government Act of 2002 and the agency's own privacy and civil liberties guidance.

These privacy assessments are for the purpose of determining the privacy risks of FBI

systems and play an important role in public transparency, oversight, and accountability.

### A. The FBI has not provided sufficient detail to show that the agency has disclosed all reasonably segregable portions of records.

The FOIA "makes clear that the fact that a responsive document fits within an

applicable exemption does not automatically entitle the keeper of such material to

withhold the *entire* record." *Charles v. Office of the Armed Forces Med. Exam'r*, 979 F.

Supp. 2d 35, 42 (D.D.C. 2013). Thus even when an agency has properly invoked a FOIA

exemption, it must disclose any "reasonably segregable portion" of the record requested.

5 U.S.C. § 552(b); *see Stolt-Nielsen Transp. Group Ltd v. United States*, 534 F.3d 728,

734 (D.C. Cir. 2008) (quoting *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116

(D.C. Cir. 2007)); *Oglesby v. United States Dep't of the Army*, 79 F.3d 1172, 1176 (D.C.

Cir. 1996) ("If a document contains exempt information, the agency must still release

'any reasonably segregable portion' after deletion of the nondisclosable portions."). "The

'segregability' requirement applies to all documents and all exemptions in the FOIA."

*Ctr. for Auto Safety v. EPA*, 731 F.2d 16, 21 (D.C. Cir. 1984).

The burden is on the agency to "provide a detailed justification for its non-

segregability." *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal

quotation marks omitted). This includes "a statement of [the government's] reasons," and

a "descri[ption of] what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). Simply claiming that a segregability review has been conducted is insufficient. *Oglesby*, 79 F.3d at 1180. In addition, if an agency seeks to "withhold a responsive document in its entirety on the basis of a FOIA exemption, the agency bears the burden of demonstrating that the nonexempt portions of the document are so inextricable from the exempt portions that document is not reasonable segregable." *Charles*, 979 F. Supp. 2d at 42. Courts have an "affirmative duty to consider the segregability issue *sua sponte*." *Trans-Pac. Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999).

In this case, the FBI has failed to meet its burden to "provide a detailed justification for its non-segregability." *Johnson*, 310 F.3d at 776. The Hardy Declaration does not provide a description of the proportions of non-exempt information, nor does the declaration explain how the material is dispersed throughout the withheld documents. *See* Hardy Decl. ¶ 42-44. Courts in this Circuit have previously rejected unsubstantiated claims of segregability and should do so in this case. *See Judicial Watch, Inc. v. DHS*, 841 F. Supp. 2d 142, 161 (D.D.C. 2012) (finding "empty invocation of the segregability standard" is not permitted under the FOIA). The FBI declaration is simply insufficient to justify the Exemption 7(E) redactions.

### B. The FBI has not established that it conducted an adequate search for responsive records.

"To meet its FOIA obligations, an agency must show that it 'conducted a search reasonably calculated to uncover all relevant documents.'" *Freedom Watch, Inc. v. NSA*, 49 F. Supp. 3d 1, 5 (D.D.C. 2014) *aff'd and remanded*, 783 F.3d 1340 (D.C. Cir. 2015)

(quoting *Weisburg v. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983)). "In adjudicating the adequacy of the agency's identification and retrieval efforts, the trial court may be warranted in relying upon agency affidavits," provided they are "relatively detailed," "nonconclusory," and "submitted in good faith." *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (internal quotation marks and brackets omitted).

The burden is on the agency to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). The adequacy of the agency's search is "measured by the reasonableness of the effort in light of the specific request." *Coleman v. DEA*, 134 F. Supp. 3d 294, 301 (D.D.C. 2015).

In the declaration submitted by the FBI to support the adequacy of its search, the agency failed to provide the search terms used, failed to explain with reasonable detail how the agency conducted its targeted search, and failed to even assert that all files likely to have responsive records were searched. *See* Hardy Decl. ¶¶ 22–23. The declaration merely states (1) that the FBI did not search the CRS, which according to the agency "is the standard search protocol for most FOIA requests," (2) that the agency performed a targeted search, and (3) that the search for records responsive to EPIC's request was conducted by the FBI's PCLU. *Id.*

In determining the adequacy of a search "[t]he court may rely on a 'reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Mobley v. CIA*, 806 F.3d 568, 580-81 (D.C. Cir. 2015) (quoting *Oglesby v.*

27

*U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Circ. 1990)). But in this case the agency declaration does not support the conclusion that the FBI conducted a reasonable search for responsive records.

There is no explanation of what files were searched, why those files were searched, or what search terms were used to conduct the search. "When an agency seeks summary judgment on the basis that it conducted an adequate search, it must provide a 'reasonably detailed' affidavit describing the scope of that search." *Pinson v. DOJ*, No. CV 12-1872 (RC), 2016 WL 29245, at *17 (D.D.C. Jan. 4, 2016). We are left to assume the FBI conducted an adequate search because that agency stated it did. "It is not enough, however, for the affidavit to state in conclusory fashion that the agency 'conducted a review of [the files] which would contain information that [the plaintiff] requested . . . .'" *Id.* In this case, the FBI has failed to provide sufficient details to determine the adequacy of the agency's search.

## CONCLUSION

For the foregoing reasons, the Court should deny the Defendant's Motion for Summary Judgment and grant EPIC's Motion for Partial Summary Judgment.

Dated: June 3, 2016                    Respectfully submitted,

                                       MARC ROTENBERG
                                       EPIC President

                                       ALAN JAY BUTLER
                                       Senior Counsel


                                       /s/  Jeramie D. Scott
                                       JERAMIE D. SCOTT
                                       EPIC National Security Counsel
                                       Electronic Privacy Information Center
                                       1718 Connecticut Ave., NW
                                       Suite 200
                                       Washington, DC 20009

                                       *Counsel for Plaintiff*