UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 14-1311 (APM) |
| v. | ) | |
| | ) | |
| FEDERAL BUREAU OF INVESTIGATION, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION
FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

Plaintiff Electronic Privacy Information Center's ("Plaintiff" or "EPIC") opposition to Defendant Federal Bureau of Investigation ("Defendant," "FBI," the "Agency," or the "Government") fails to overcome the evidence showing it has received all of the information to which it is entitled in response to its request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Further, EPIC's cross-motion for summary judgment should be denied because the FBI has properly withheld information pursuant to FOIA's statutory exemption 7(E). The FBI is entitled to judgment as a matter of law because the FBI: (1) conducted a reasonable and adequate search; (2) produced all documents responsive to Plaintiff's request and subject to FOIA; and (3) properly withheld information pursuant to the statutory exemptions.

I. **SUMMARY OF MATERIAL FACTS NOT IN GENUINE DISPUTE**[1]

**A.  Plaintiff's FOIA Request.**

By faxed letter dated June 4, 2014, Plaintiff submitted a FOIA request for "all of the FBI's privacy assessments not already published online."  (*See* Decl. of David M. Hardy, Section Chief, Record/Information Dissemination Section, Records Management Division, Federal Bureau of Investigation [hereinafter "Hardy Decl."] ¶¶ 8-9.)   Specifically, Plaintiff's request stated:

- All Privacy Impact Assessments ["PIAs"] the FBI has conducted that are not publicly available at http://www.fbi.gov/foia/privacy-impact-assessments/department-of-justice-federal-bereau-of-investigation.

- All Privacy Threshold Analysis ["PTAs"] documents and Initial Privacy Assessments the FBI has conducted since 2007 to *present*.[2]

(*Id.* ¶ 9.)   In addition, Plaintiff requested that any duplication fees for responsive material be waived.  (*Id.*)   In letters dated June 17, 2014, the FBI acknowledged receipt of Plaintiff's FOIA request, assigning FOIPA number 1272294-000 for records concerning FBI's PIAs and FOIPA 1272295-000 for records concerning FBI's PTAs and advised Plaintiff it was searching the indices to the FBI's Central Records System for the information responsive to its request.  (*Id.* ¶ 10.)   Additionally, Plaintiff was informed it could check the status of its FOIA request at www.fbi.gov/foia, and its request for a fee waiver was being considered with a decision to be determined at a later date.  (*Id.*)

---

[1]      As indicated in the FBI's attached Statement of Material Facts Not in Genuine Dispute in Support of Its Opposition to Defendant's Cross-Motion for Summary Judgment, Defendant's original statement is not in genuine dispute because Plaintiff has either agreed each statement is not in dispute or has declined to provide citations to record evidence contradicting an individual statement.

[2]      For search scoping purposes June 24, 2014, was determined as the search cut-off date, which was the date the FBI conducted its original search for potentially responsive material.

**B. FBI Completes Its Search and Notifies EPIC; FBI Denies and
Then Grants EPIC's Requests for Fee Waivers.**

On August 1, 2014, EPIC filed its complaint in this case. (ECF No. 1.) In letters dated August 12, 2014, the FBI advised Plaintiff it located approximately 1,350 pages of records potentially responsive to the subject of its FOIPA request number 1272294-000 and approximately 3,390 pages of records potentially responsive to the subject of its FOIPA request number 1272295-000.[3] (Hardy Decl. ¶ 12.) In letters dated August 20, 2014, the FBI advised Plaintiff its fee waiver request was denied for each subject matter. (*Id.* ¶ 13.) Subsequently, the FBI agreed to waive all fees related to the processing of the request. (*Id.*) In addition, the FBI agreed to review 500 pages of documents per month beginning on December 15, 2014, with the final production completed by August 31, 2015. (*Id.*)

**C. The FBI Produces Responsive Records on a Rolling Production Basis.**

By letter dated December 15, 2014, the FBI advised Plaintiff it had reviewed 1,069 pages of potentially responsive records, processed 22 pages deemed responsive, and released 22 pages in full, or in part, for the first interim release for FOIPA request number 1272294-000 (FBI's PIAs Request). (*Id.* ¶ 14.) On January 15, 2015, the FBI advised Plaintiff it had reviewed 816 pages of potentially responsive records, processed 89 pages deemed responsive, and released 69 pages in full, or in part, for the final interim release for FOIPA request number 1272294-000 (FBI's PIAs Request). (*Id.* ¶ 15.) Next, on February 17, 2015, the FBI advised EPIC it had reviewed 502 pages of potentially responsive records, processed 445 pages deemed responsive, and released 439 pages in full, or in part, for the first interim release for FOIPA request number

---

[3] These numbers were approximations and do not reflect the actual numbers of documents processed as part of the agreed-upon rolling production discussed *infra*.

1272295-000 (FBI's PTAs Request).[4]   (*Id.* ¶ 16.)  The following month, on March 16, 2015, the FBI advised Plaintiff it had reviewed 500 pages of potentially responsive records, processed 466 pages deemed responsive, and released 457 pages in full, or in part, for the second interim release for FOIPA request number 1272295-000 (FBI's PTAs Request).  (*Id.* ¶ 17.)

Next, on April 15, 2015, the FBI advised Plaintiff it had reviewed 500 pages of potentially responsive records, processed 493 pages deemed responsive, and released 462 pages in full, or in part, for the third interim release for FOIPA request number 1272295-000 (FBI's PTAs Request).  (*Id.* ¶ 18.)   By letter dated May 15, 2015, the FBI advised Plaintiff it had reviewed 500 pages of potentially responsive records, processed 479 pages deemed responsive, and released 453 pages in full, or in part, for the fourth interim release for FOIPA request number 1272295-000 (FBI's PTAs Request).  (*Id.* ¶ 19.)   By letter dated June 15, 2015, the FBI advised plaintiff it had reviewed 375 pages of potentially responsive records, processed 373 pages deemed responsive, and released 367 pages in full, or in part, for the fifth interim release for FOIPA request number 1272295-000 (FBI's PTAs Request).  (*Id.* ¶ 20.)   Finally, on January 11, 2016, the FBI advised plaintiff it had reviewed 117 pages of potentially responsive records, processed all 117 pages as responsive, and withheld them in full, for a supplemental release for FOIPA request number 1272294-001 (FBI's PIAs Request).   (*Id.* ¶ 21.)   With each of these rolling releases, the FBI indicated it withheld information pursuant to FOIA Exemptions 1, 3, 5, 6, 7(C), 7(D), and 7(E), 5 U.S.C. §§ 552, (b)(1), (b)(3), (b)(5), (b)(6), (b)(7)(C), (b)(7)(D), and (b)(7)(E).  (*See id.* ¶¶ 14-21.)

---

[4]      RIDS inadvertently advised only 445 pages were deemed responsive and processed.  In actuality it was 451 Bates stamped pages.

**D.  Explanation of FBI's Exhaustive Search for Responsive Records:  The FBI Realizes a Normal, Index Search Will Not Provide Records, But Rather A Targeted Search Must Be Performed to Identify Responsive Information.**

As noted above, in the FBI's June 17, 2014, acknowledgment letters of the Plaintiff's June 4, 2014 FOIA request, EPIC was advised that the indices to the FBI's Central Records System ("CRS") would be searched for the subject of Plaintiff's request.  (*Id.* ¶ 22.)  This is the standard search protocol for most FOIA requests, because of the way the CRS is indexed.[5]  (*Id.*)  But upon further review of the plaintiff's FOIA request, the FBI determined that the records EPIC requested concerning FBI PIAs and PTAs are not reflective of the manner in which FBI investigative records are indexed, since the subject matter of EPIC's request is not a named individual or victim, or that of a common investigation subject pursued by the FBI.  (*Id.*)  Given the purpose, design, and organization of the information stored in the CRS, and in light of the subject matter of EPIC's FOIA request, the FBI determined that it needed to conduct searches outside an Automated Case Support ("ACS") search of the CRS and Sentinel to locate records potentially responsive to EPIC's FOIA requests.  (*Id.*)

Therefore, FBI determined a targeted search reasonably calculated to locate records responsive to plaintiff's request was needed.  (*Id.* ¶ 23.)  The FBI's targeted search was thus directed, on or about June 27, 2014, to the FBI's Office of General Counsel, Privacy and Civil Liberties Unit ("PCLU").  (*Id.*)  Within the PCLU, the Privacy and Civil Liberties Officer ("PCLO") ensures overall FBI-wide compliance with and implementation of information privacy

---

[5]        The CRS is an extensive system of records consisting of applicant, investigative, intelligence, personnel, administrative, and general files compiled and maintained by the FBI in the course of fulfilling its integrated missions and functions as a law enforcement, counterterrorism, and intelligence agency.  (*See* Hardy Decl. ¶ 22 n.8.)  The CRS is indexed in a manner that meets the FBI's investigative needs and priorities, and allows FBI personnel to reasonably and adequately locate pertinent files in the performance of their law enforcement duties.  (*Id.*)  The general indices are arranged in alphabetical order and comprise an index on a variety of subject matters that includes individuals, organizations, events, or other subjects of investigative interest that are indexed for future retrieval. (*Id.*)

protections.  (*Id.*)  The PCLO assists in developing and evaluating legislative, regulatory, and other policy proposals that implicate privacy issues.  (*Id.*)  In addition, the PCLO oversees, coordinates, and facilitates agency privacy compliance with laws, regulations, and policies relating to information privacy, such as the Privacy Act and Section 208 of E-Government Act. (*Id.*)  Finally, the PCLO approves all PTAs and conditionally approves PIAs for all FBI Information Technology ("IT") systems (DOJ's Chief PCLO is the final PIA approval authority). (*Id.*)  Therefore, RIDS directed EPIC's request to the PCLU, which is the unit reasonably likely to maintain responsive material for EPIC's request.  (*Id.*)  Importantly, there is no indication from the information located as the result of the targeted search efforts by the PCLU to conclude that responsive material would reside in any other FBI system or location.  (*Id.*)

### E.  The FBI Processed the Documents Retrieved in Its Reasonable Search and Released All Responsive Information Subject to FOIA.

The FBI reviewed a total of 4,379 pages of potentially responsive documents, of which, 2,490 pages were deemed responsive to Plaintiff's request.  (*Id.* ¶ 24.)  Of these 2,490 processed pages, 2,275 pages were released in whole or in part, while the remaining 215 pages were withheld in full.  (*Id.*)  All information included in the sample at issue here was processed to achieve maximum disclosure consistent with the access provisions of the FOIA.  (*Id.* ¶ 25.)  No reasonably segregable, non-exempt portions of documents subject to the FOIA were withheld from EPIC.  (*Id.*)  To further describe the information withheld could identify the material sought to be protected.  (*Id.*)

### F.  FBI Properly Withheld Statutorily-Exempt Information Pursuant To FOIA Exemptions 5 and 7(E).

The FBI properly withheld the following categories of information pursuant to Exemptions 5, and 7(E), as summarized on this chart:

| Exemption (b)(5) | Privileged Information |
|---|---|
| (b)(5)-1 | Deliberative Process Materials |
| (b)(5)-2 | Attorney-Client[6] |

| Exemption (b)(7)(E) and Category | Investigative Techniques and Procedures |
|---|---|
| (b)(7)(E)-2 | Sensitive Internal FBI terminology, definitions, information systems, and system applications unknown to the general public relating to operational directives and capabilities of the systems and the tools used in the collection, stored, retrieval, and analysis of collected information. |
| (b)(7)(E)-3 | Database and program interface tools, information transmission pathways, and access portals for shared system initiatives. |
| (b)(7)(E)-4 | FBI units, unit locations, and partners (e.g. federal contractors) participating in program and system development, and testing, building/office locations where the devices are developed and tested, and operational coordination on shared missions. |
| (b)(7)(E)-5 | Software and hardware specifications, system infrastructure, and security protocols used to operate and maintain sensitive systems. |

(Hardy Decl. ¶ 26.)   Additionally, as the FBI explained in detail, all reasonably segregable information was released.  Indeed, the FBI explained its segregability analysis generally, *see id.* ¶ 25, as well as the specific segregability analysis applied to the sample set at issue in this case. (*Id.* ¶¶ 42-44.)

As indicated in the parties' Joint Status Report (ECF No. 23) of Feb. 16, 2016, the only issues remaining in dispute then were EPIC's challenges to the sufficiency of FBI's search, the FBI's segregability analysis, and the FBI's withholdings pursuant to Exemptions 5, 7(D), and 7(E).  As explained in Paragraph 43 of the Hardy Declaration, the FBI has withdrawn its assertion of Exemption 7(D).  (*See* Hardy Decl. ¶ 43.)  Based on EPIC's opposition and cross-

---

[6]     In the sample set provided to the plaintiff only (b)(5)-1 Deliberative Process was cited as justification to withhold the material; however, the FBI also asserts (b)(5)-2 Attorney-Client for the same  information.

motion for summary judgment, the only remaining issues in dispute are the adequacy of the FBI's search, its segregability analysis, and its withholdings pursuant to Exemption 7(E).  (*See generally* Pl. Opp. & Cross-Mot. for Summ. J. [ECF No. 28-1].)  Further, Plaintiff has sought judgment in its favor on the FBI's withholdings under Exemption 7(E).  (*See id.*)  Because the FBI conducted a reasonable and adequate search in response to EPIC's requests and FBI released all responsive, non-exempt and segregable information subject to FOIA within the sample identified by the parties, the FBI is entitled to judgment as a matter of law.

## II.   ARGUMENT

### A.  Standard of Review

Where no genuine dispute exists as to any material fact, summary judgment is required. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).  A genuine issue of material fact is one that would change the outcome of the litigation.  *Id.* at 247.  "The burden on the moving party may be discharged by 'showing' – that is, pointing out to the [Court] – that there is an absence of evidence to support the non-moving party's case."  *Sweats Fashions, Inc. v. Pannill Knitting Co., Inc.*, 833 F.2d 1560, 1563 (Fed. Cir. 1987).  Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must instead proffer specific facts showing that a genuine issue exists for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Thus, to avoid summary judgment here, the Plaintiff (as the non-moving party) must present some objective evidence that would enable the Court to find he is entitled to relief.  In *Celotex Corp. v. Catrett*, the Supreme Court held that, in responding to a proper motion for summary judgment, the party who bears the burden of proof on an issue at trial must "make a sufficient showing on an essential element of [his] case" to establish a genuine dispute.  477 U.S. 317, 322-23 (1986).  In *Anderson*, the Supreme Court further explained that "the mere existence

of a scintilla of evidence in support of the Plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the Plaintiff." *Anderson*, 477 U.S. at 252; *see also Laningham v. Navy*, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (the non-moving party is "required to provide evidence that would permit a reasonable jury to find" in its favor). In *Celotex*, the Supreme Court further instructed that the "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### B.  Summary Judgment Standard as Applied to FOIA Cases

In a FOIA action, a district court has jurisdiction to enjoin only when an agency has improperly withheld agency records. 5 U.S.C. § 552(a)(4)(B). FOIA does not allow the public to have unfettered access to government files. *McCutchen v. United States Dep't of Health and Human Services*, 30 F.3d 183, 184 (D.C. Cir. 1994). Although disclosure is the dominant objective of FOIA, there are several exemptions to the statute's disclosure requirements. *Department of Defense v. FLRA*, 510 U.S. 487, 494 (1994). FOIA requires that an agency release all records responsive to a properly submitted request unless such records are protected from disclosure by one or more of the Act's nine exemptions. 5 U.S.C. § 552(b); *U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 150-51 (1989). To protect materials from disclosure, the agency must show that they come within one of the FOIA exemptions. *Public Citizen Health Research Group v. FDA*, 185 F.3d 898, 904 (D.C. Cir. 1999).

The "vast majority" of FOIA cases are decided on motions for summary judgment. *See Media Research Ctr. v. U.S. Dep't of Justice*, 818 F. Supp. 2d 131, 136 (D.D.C. 2011) ("FOIA cases typically and appropriately are decided on motions for summary judgment."); *Citizens for*

*Responsibility & Ethics in Washington v. U.S. Dep't of Labor*, 478 F. Supp. 2d 77, 80 (D.D.C. 2007) ("*CREW*").   To meet its burden, a defendant may rely on reasonably detailed and non-conclusory declarations. *See McGehee v. C.I.A.*, 697 F.2d 1095, 1102 (D.C. Cir. 1983); *Media Research Ctr.*, 818 F. Supp. 2d at 137.

> [T]he Court may award summary judgment solely on the basis of information provided… in declarations when the declarations describe 'the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith.'

*CREW*, 478 F. Supp. 2d at 80 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).   Thus, once the court determines that an agency has released all non-exempt material, it has no further judicial function to perform under the FOIA and the FOIA claim is moot.   *Perry v. Block*, 684 F.2d 121, 125 (D.C. Cir. 1982); *Muhammad v. U.S. Customs & Border Prot.*, 559 F. Supp. 2d 5, 7-8 (D.D.C. 2008).   Accordingly, summary judgment is appropriate in a FOIA action, such as this one, where the pleadings, together with the declarations, demonstrate that there are no material facts in dispute and the requested information has been produced or is exempted from disclosure, and the agency, as the moving party, is entitled to judgment as a matter of law.   Fed. R Civ. P. 56(a); *Students Against Genocide v. Department of State*, 257 F.3d 828, 833 (D.C. Cir. 2001); *Fischer v. U.S. Dep't of Justice*, 596 F.Supp.2d 34, 42 (D.D.C. 2009) ("summary judgment may be granted to the government if 'the agency proves that it has fully discharged its obligations under the FOIA, after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester'") (citation omitted).

### C.  The FBI's Search Was Reasonable and Adequate and Plaintiff's Opposition Overlooks Crucial Statements in the FBI's Declaration.

Plaintiff's opposition (ECF No. 28-1 at 26-27) challenges the adequacy of the FBI's search in response to EPIC's request for information.  Specifically, Plaintiff claims that the FBI only provided generic information that is conclusory in nature and, therefore, has not satisfied the applicable legal standard.   But the Hardy Declaration contains great detail related to the review of Plaintiff's request and the deliberate, calculated approach the FBI took to ensure it located all of its responsive documents.  Specifically, the Hardy Declaration explains:

> [T]he FBI determined a targeted search reasonably calculated to locate records responsive to plaintiff's request was needed.  The FBI's targeted search was thus directed, on or about June 27, 2014, to the FBI's Office of General Counsel, Privacy and Civil Liberties Unit ("PCLU").  Within the PCLU, the Privacy and Civil Liberties Officer ("PCLO") ensures overall FBI-wide compliance with and implementation of information privacy protections.   The PCLO assists in developing and evaluating legislative, regulatory, and other policy proposals that implicate privacy issues.   In addition, the PCLO oversees, coordinates, and facilitates agency privacy compliance with laws, regulations, and policies in relation to information privacy, such as the Privacy Act and Section 208 of the E-Government Act.   Finally, the PCLO approves all PTAs and conditionally approves PIAs for all FBI Information Technology ("IT') systems . . . .  Therefore [FBI Records] directed EPIC's request to the PCLU, which is the unit reasonably likely to maintain responsive material for EPIC's request.  ***As applicable here, there is no indication from the information located as a result of the targeted search efforts . . . to conclude that responsive material would reside in any other FBI system or location.***

(Hardy Decl. ¶ 23 (emphasis added).)

As this Court has noted, "'The standard for determining whether a search was adequate depends on the adequacy of the search for documents, not whether additional potentially responsive documents exist.'"  *Lardner v. F.B.I.*, 875 F. Supp. 2d 49 (D.D.C. 2012) (quoting *Steinberg v. Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994)).  Further, "[a]n adequate search consists of a good faith, reasonable search of those systems of records likely to possess the requested information."  *Id.* (citing *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

Here, as demonstrated by the above quoted language, the Hardy Declaration provides specific and precise detail about why the targeted search was conducted.  *Oglesby*, 920 F.2d at 68; *cf. Nation Magazine, Wash. Bureau v. U.S. Customs Service*, 71 F.3d 885, 890 (D.C. Cir. 1995). Plaintiff's opposition seems to overlook the crucial statements in the Declaration demonstrating that the FBI has stated affirmatively that the search conducted was thorough and that no other records systems are likely to contain any responsive information; Defendant is therefore entitled to judgment as a matter of law.

### D.  FBI's Withholdings Were Appropriate.

As explained above, due to the parties' stipulation, the FBI's unilateral withdrawal of its assertion of Exemption 7(D), and EPIC's agreement not to contest withholdings under Exemption 5, the only remaining issue for the Court to resolve related to withheld information is that for which the FBI applied Exemption 7(E).  Because the information withheld is exempt from public disclosure under FOIA, it was properly withheld, as the FBI explained in detail in the Hardy Declaration and its motion for summary judgment and reinforces below.

1. **Plaintiff's Opposition and Cross-Motion Fail to Overcome the Defendant's Motion Which Establishes that the FBI Is a Law Enforcement Agency and the Records in this Case Were Compiled for a Law Enforcement Purpose.**

Plaintiff's opposition/cross-motion argues, *see* ECF No. 28-1 at 23-24, that the FBI has not demonstrated that the information withheld pursuant to Exemption 7(E) was compiled for a law enforcement purpose or that the information properly falls within the FOIA's statutory exemption for information that would reveal law enforcement investigative techniques and procedures.  As other courts have held, the information withheld comfortably satisfies both of Plaintiff's concerns.  The information falls within the FBI's – the largest federal law enforcement agency in the Department of Justice – investigative and enforcement processes and procedures.

Further, disclosure of the information would reveal techniques not known to the public and risk providing criminals with information allowing them to circumvent law enforcement's techniques.   Therefore, Defendant's motion should be granted and Plaintiff's cross-motion should be denied.

First, the FBI is the Department of Justice's most prominent law enforcement agency. Pursuant to 28 U.S.C. §§ 533 and 534, and E.O. 12333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations (AGG-DOM) and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States.   (Hardy Decl. ¶ 33.)   Under this investigative authority, the responsive records at issue in this case were compiled for the following specific law enforcement purpose.   (*Id.*)

Specifically to this case, the pertinent records were compiled and or created in furtherance of FBI's law enforcement, national security, and intelligence missions.   (*Id.*)   To accomplish these missions, the FBI must perform certain tasks and operational functions including the identification of, development, and implementation of law enforcement and intelligence gathering methods, techniques, procedures, and guidelines.   (*Id.*)   The FBI uses sensitive information collection systems, networks, infrastructure, and analytical application tools to conduct surveillance, collect intelligence, analyze and interpret collected data, and maintain secure storage of law enforcement and intelligence related data for future retrieval in support of operational needs.   (*Id.*)   Accordingly, there is a nexus between the FBI's law enforcement responsibilities and these responsive records, especially those concerning internal

computer systems, the development of surveillance technical abilities and associated logistical resources, as other courts have held.   (*Id.*); *see also Abdelfattah v. U.S. Imm. & Customs Enforcement*, 851 F. Supp. 2d 141, 145 (D.D.C. 2012) ("[W]here an agency [ICE] specializes in law enforcement, its decision to invoke exemption 7 is entitled to deference.") (first alteration in original, additional quotation and citation omitted); *Isiwele v. United States Dep't of Health & Human Servs.*, 85 F. Supp. 3d 337, 360 (D.D.C. 2015) ("ICE properly redacted ... database codes, case numbers, and numeric references, specifically from TECS, under FOIA 7(E).") (internal quotations omitted); *Gosen v. United States Citizenship & Immigration Servs.*, 75 F. Supp. 3d 279, 290 (D.D.C. 2014) ("Indeed, many courts have upheld the government's withholding of the same sort of information from the same databases that are at issue in this case.")  Thus, as the FBI is a law enforcement agency and the records at issue were compiled for a law enforcement purpose, the Agency properly invoked Exemption 7(E).

## 2.   Exemption (b)(7)(E)

Under Exemption 7(E), a law enforcement agency may withhold "'records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.'"  *Blackwell v. F.B.I.*, 646 F.3d 37, 40 (D.C. Cir. 2011) (quoting 5 U.S.C. § 552(b)(7)(E)).  In this Circuit, "'the exemption looks not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a

reasonably expected risk.'"  *Id.* at 42 (quoting *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009)).  In fact, "Exemption 7(E) sets a relatively low bar for the agency to justify withholding: 'Rather than requiring a highly specific burden of showing how the law will be circumvented, exemption 7(E) only requires that the [agency] demonstrate logically how the release of the requested information might create a risk of circumvention of the law.'"  *Id.* (quoting *Mayer Brown*, 562 F.3d at 1194) (internal quotation marks and alterations omitted).  The FBI properly withheld four categories of information pursuant to Exemption 7(E)'s statutory exclusion.  A plain reading of the FBI's description of the information withheld demonstrates that it is exempt from disclosure:

| Exemption (b)(7)(E) and Category | Investigative Techniques and Procedures |
| --- | --- |
| (b)(7)(E)-2 | Sensitive Internal FBI terminology, definitions, information systems, and system applications unknown to the general public relating to operational directives and capabilities of the systems and the tools used in the collection, stored, retrieval, and analysis of collected information. |
| (b)(7)(E)-3 | Database and program interface tools, information transmission pathways, and access portals for shared system initiatives. |
| (b)(7)(E)-4 | FBI units, unit locations, and partners (e.g. federal contractors) participating in program and system development, and testing, building/office locations where the devices are developed and tested, and operational coordination on shared missions. |
| (b)(7)(E)-5 | Software and hardware specifications, system infrastructure, and security protocols used to operate and maintain sensitive systems. |

Plaintiff's opposition offers a general challenge to the material withheld under Exemption 7(E) because, it argues, the descriptions are "too vague and conclusory to support the agency's exemption claim, and the FBI's own descriptions make clear that disclosure would not reveal non-public techniques or procedures . . . ."  (Pl. Opp. & Cross-Mot. for Summ. J. at 18.)  But the Hardy Declaration *does* provide extensive detail on why the FBI assessed a threat based upon

- 15 -

potential release of the information.  Indeed, based upon both binding precedent and persuasive authority, the FBI has comfortably satisfied its obligation of demonstrating that the information is statutorily exempt from public disclosure.

First, as Defendant set forth in its motion and as described above, the D.C. Circuit has instructed that the Agency's burden of persuasion is low – "the chance of a reasonably expected risk" – to withhold information under Exemption 7(E).  *Blackwell v. F.B.I.*, 646 F.3d at 42. Further, other courts have found information less sensitive than the information at issue here as exempt from disclosure.  Specifically, in *Tracy v. U.S. Dep't of Justice*, -- F. Supp. 3d -- , Civ. No. 15-655-RDM, 2016 WL 32481815, at *9 (D.D.C. June 28, 2016), the Court held that because the FBI asserted that the release of internal website addresses might increase the risk of cyberattacks, those addresses were properly withheld.  Indeed, the Court analyzed an argument there similar to one that Plaintiff makes here:  the plaintiff claimed that because the FBI had failed to pinpoint which specific investigation for which the records were compiled, the FBI could not assert Exemption 7(E).  *Id.*; *compare* Pl. Opp. & Cross-Mot. for Summ. J. at 16-17 (arguing that the FBI failed to carry its burden under Exemption 7(E) because EPIC believed the FBI had not been sufficiently specific in its declaration).  The Court in *Tracy* rejected the plaintiff's argument, acknowledging that the D.C. Circuit's instructions in *Blackwell* and *Mayer Brown LLP* did not require what the plaintiff claimed.   2016 WL 32481815, at *9 (citing *Shapiro v. U.S. Dep't of Justice*, 78 F. Supp. 3d 508, 520 (D.D.C. 2015); *Labow v. U.S. Dep't of Justice*, 66 F. Supp. 3d 104, 113 n.2 (D.D.C. 2014)).

Here, the FBI provided more than conclusory statements, but rather provided full, precise explanations of why the information withheld would pose a risk of allowing criminals to circumvent the FBI's investigations if released publicly, as explained in further detail below.

These explanations satisfy the plain language of the statutory exclusion in Exemption 7(E), particularly in light of the "relatively low bar" the D.C. Circuit has instructed applies. *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009). As Defendant set forth in its motion, the Hardy Declaration comfortably supports the FBI's withholdings.

     i.  *Exemption 7(E)-2*

   First, the FBI asserted Exemption 7(E)-2 to protect detailed information related to the development and deployment of sensitive internal FBI information collection systems, networks, infrastructure, and analytical application tools, as law enforcement techniques and its associated procedures. (Hardy Decl. ¶ 37.) The withheld information about these technologies is multi-faceted and includes internal FBI terminology, definitions, and details on sensitive information systems, and system applications unknown to the general public relating to operational directives and capabilities of these systems and the tools used in the collection, storage, retrieval, and analysis of collected investigative information. (*Id.*) Disclosure of these various technological and developmental aspects and capabilities could reasonably be expected to risk circumvention of the law as those pieces of related information, individually, or assembled in mosaic fashion, would provide key details on the development, use, capabilities, limitations and vulnerabilities, scope of employment, equipment innovations and specifications, and reveal current and/or contemplated investigative applications. (*Id.*)

   Indeed, this information would provide criminals and terrorists with a virtual "playbook" on how to evade detection from being surveyed by these sensitive internal FBI information collection systems, networks, infrastructure, and analytical application tools, used and employed in national security and criminal investigations, thus enhancing their ability to avoid detection, concealing their identities, or evading apprehension. (*Id.*) Accordingly, because the disclosure

- 17 -

of this information could reasonably be expected to reveal non-public details about law enforcement techniques that are still being used by the FBI and risk circumvention of the law, the FBI has properly withheld this information pursuant to FOIA Exemption 7(E)-2.[7]  *Blackwell*, 646 F.3d at 42 (discussing Exemption 7(E)'s proper application not only to actual, tangible threats of circumvention of law enforcement, but also to the risk of circumvention).  Further, even if EPIC were to argue that this information were commonly known, that argument should have no bearing on the Court's analysis.  *Judicial Watch, Inc. v. U.S. Dep't of Commerce,* 337 F. Supp. 2d 146, 181 (D.D.C. 2004) ("[E]ven commonly known procedures may be protected from disclosure if the disclosure could reduce or nullify their effectiveness.") (citing *Coleman v. FBI*, 13 F. Supp. 2d 75, 83 (D.D.C. 1998)); *see also Soghoian v. U.S. Dep't of Justice,* 885 F. Supp. 2d 62, 75 (D.D.C. 2012) ("Knowing what information is collected, how it is collected, and more importantly, when it is *not* collected, is information that law enforcement might reasonably expect to lead would-be offenders to evade detection").

ii.      *Exemption 7(E)-3*

Next, the FBI has labeled information it properly withheld under Exemption 7(E) as "Exemption 7(E)-3."   The information withheld in this sub-category provides detailed descriptions of database structures and program interface tools used in the development of sensitive information systems.  (Hardy Decl. ¶ 39.)  In addition, Exemption 7(E)-3 was asserted

---

[7]       Exemption (b)(7)(E)-2, as a basis for withholding information, was asserted on the following Bates pages of the sample set: EPIC-2, 4, 9-10, 12, 15, 39-44, 172-176, 217, 219-222, 227-233, 252-257, 372-386, 504-505, 563-566, 587-592, 612-613, 645-646, 669-670, 717-718, 720-724, 811-914, 834, 836-837, 839-841, 866-870, 907-908, 945, 1270-1275, 1278, 1342-1344, 1349-1351, 1490-1493, 1495, 1497, 1562-1569, 1706-1707, 1712, 1714-1715, 1812, 1927, 1929-1930, 1937-1938, 1940, 2005, 2119-2120, 2123, 2217-2218, and 2258-2263.  (*See* Hardy Decl. Ex. P; *see also id.* ¶ 39 & n.11.)  Plaintiff's Footnote 8 in its opposition correctly pointed out that Defendant's motion for summary judgment and attached declaration incorrectly stated that the FBI withheld information from 219-233.  The above list is accurate.  Defendant apologizes to the Plaintiff and to the Court for the error.  Defendant respectfully disagrees with Plaintiff, though, and believes that Plaintiff's Footnote 8 is inaccurate where it states that four pages were withheld in full under (b)(7)(E)-2.  Those four pages, Bates pages 218, 223, 224 and 225 were released in full.

to protect the details of the information systems data transmission pathways, the access portals for shared system initiatives, the operational directives and integrity protocols of the information systems, system applications, databases, and program interface tools.  (*Id.*)  Disclosure of these various internal databases, system applications, and interface tools, could reasonably be expected to risk circumvention of the law as this type of information could expose the devices, equipment, and/or databases to hackers and unauthorized users, who could disrupt official business and compromise the effectiveness of the FBI's internal computer systems by devising ways in which to access – and tamper with – the systems without detection.[8]  (*Id.*)  This palpable risk of circumvention makes this information statutorily exempt from public disclosure as the D.C. Circuit instructed in *Blackwell*.  646 F.3d at 42. *See also Blackwell v. FBI*, 680 F. Supp. 2d 79, 92 (D.D.C. 2010) ("The manner in which ChoicePoint data is searched, organized, and reported to the FBI is an internal technique, not known to the public . . . the information is exempt from disclosure under…7(E)").

   *iii.*  *Exemption 7(E)-4*

   Third, the FBI properly withheld Exemption 7(E) material under information it labeled Exemption 7(E)-4.  This sub-category contains information that could identify the location and identity of FBI units, and or joint units, partners (e.g., federal contractors) participating in program and system development, and system testing.  (Hardy Decl. ¶ 40.)   In addition, Exemption 7(E)-4 protects the building and office locations where the information systems and interface applications are developed and tested, and the details on the operational coordination on shared missions.  (*Id.*)  Specifically, the office location and units, and operational partners, are

---

[8]  Exemption (b)(7)(E)-3, as a basis for withholding information, was asserted on the following Bates pages of the sample set: EPIC 39-43, 173-176, 230, 254-256, 386, 505, 589, 612, 669, 720-723, 812, 836, 839-841, 867-868, 907-908, 1270-1274, 1350-1351, 1492-1493, 1564-1565, 1706-1707, 1714-1715, 1929, 1937-1938, 2119, 2218, and 2260.  (Hardy Decl. ¶ 40 & n.12.)

usually found in the administrative headings of the PTA and PIA documents.  (*Id.*)  Disclosure of the location of the units, and operational partners, conducting the research, development, and testing of these sensitive information systems and interface applications would reveal the location of these systems, exposing the systems, equipment, and/or databases to potential hackers and unauthorized users, who could disrupt official business and compromise the effectiveness of the FBI's internal computer and information systems by devising ways in which to access – and tamper with – the systems without detection.  (*Id.*); *see also Blackwell*, 680 F. Supp. 2d at 92 (holding that information related to the FBI's manner of information gathering is exempt from disclosure under 7(E)).

Disclosure would provide foreign governments and their intelligence operatives with needed pieces of information to facilitate covert or cyber penetration of these facilities.  (Hardy Decl. ¶ 40.)  The particular squads, units and sections, and specific coordination nodes used in developing technological advancements of investigative techniques is not known to the general public.  (*Id.*)  These squads are responsible for implementing particular FBI technological studies, and development of information systems, networks, and infrastructure into effective tools.  (*Id.*)  Revealing the existence of these squads, development centers, training locations, and coordination of resources would reveal the level of FBI advancements, operational directives as well as planning and operational application studies.  (*Id.*)  Providing this information provides criminals and enemies of the United States with valuable insight into where the FBI is focusing its limited resources.  (*Id.*); *see also Soghoian,* 885 F. Supp. 2d at 75 (holding that knowledge of where and how information is collected by the FBI is protected by 7(E)).[9]

---

[9]     Exemption (b)(7)(E)-4, as a basis for withholding information, was asserted on the following Bates pages of the sample set: EPIC 173-175, 220, 230, 254, 256, 386, 565-566, 612, 645-645, 670, 679, 720-722, 812, 836, 907-908, 928, 944, 1176, 1270-1274, 1343-1344, 1565, 1712, 1715, 1757, 1809, 1937, 2218, and 2260-2261. (Hardy Decl. ¶ 41 & n.13.)

iv.      *Exemption 7(E)-5*

The final FBI sub-category of information properly withheld under Exemption 7(E) is Exemption 7(E)-5.   This sub-category contains detailed information related to software and hardware specifications, system infrastructure, and security protocols used to operate and maintain sensitive systems.  (Hardy Decl. ¶ 41.)  Disclosure of the details pertaining to software and hardware use, and security protocols used to operate and maintain the sensitive information systems could reasonably be expected to risk circumvention of the law as this type of information could expose the devices, equipment, and security protocols and platforms to hackers and unauthorized users, who could disrupt official business and compromise the effectiveness of the FBI's internal computer systems by devising ways in which to access – and tamper with – the systems security protocols without detection.  (*Id.*)  Because the disclosure of this information could reasonably be expected to reveal non-public details about law enforcement techniques that are still being used by the FBI and risk circumvention of the law, the FBI has properly withheld this information pursuant to FOIA Exemption 7(E).[10]  *Blackwell*, 646 F.3d at 40; *see also Soghoian,* 885 F. Supp. 2d at 75.

Based upon the detailed, supported reasons that the FBI has provided for its withholdings, the FBI properly withheld information that was statutorily exempt from public disclosure pursuant to Exemption 7(E).   Thus, Defendant's motion should be granted and Plaintiff's cross-motion should be denied.

---

[10]    Exemption (b)(7)(E)-5, as a basis for withholding information, was asserted on the following Bates pages of sample set: EPIC-219, 230, 254-256, 386, 505, 565-566, 589, 612-613, 645-646, 669, 720-722, 812, 836, 839-841, 867-868, 945, 1271-1274, 1278, 1351, 1492-1493, 1564-1565, 1706-1707, 1714-1715, 1929, 1937-1938, 1940, 2119-2120, 2218, and 2260.

### 3.   All Reasonably Segregable Information Was Released.

Plaintiff's final challenge to Defendant's motion for summary judgment is an argument that the FBI has not satisfied its obligations under FOIA to segregate exempt information from information potentially subject to release.   As Defendant stated in its motion, the law states: "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "It has long been a rule in this Circuit that non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exempt portions."   *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).   Although the agency "must provide a 'detailed justification' for its non-segregability," it "is not required to provide so much detail that the exempt material would be effectively disclosed." *Johnson v. Exec. Office for U.S. Attorneys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data*, 566 F.2d at 261).

EPIC complains that the FBI has not provided sufficient descriptions of the non-exempt information or "how the material is dispersed throughout the withheld documents."   (Pl. Opp. & Cross-Mot. for Summ. J. at 26.)   But this argument overlooks the D.C. Circuit's instruction quoted immediately above as it seems to demand a description that would "provide so much detail that the exempt material would be effectively disclosed." *Johnson*, 310 F.3d at 776.

The FBI has explained its segregability analysis generally, *see id.* ¶ 25.   If this general description were all that Defendant had provided, Plaintiff's argument may have carried the day. The FBI, however has also provided its specific segregability analysis applied to the sample set at issue in this case.   (*Id.* ¶¶ 42-44.)   Indeed, Paragraph 44 provides the step-by-step segregability analysis FBI undertook for each of three categories of documents:   (1) documents it could now release in full; (2) documents with information withheld in part; and (3) documents withheld in

full.  (*Id.* ¶ 44.)  For each category, the Hardy Declaration explains both the analysis and the reason for any decisions made based upon that analysis, i.e., whether additional information could be released as segregable from exempt information.  (*Id.*)  This information satisfies the D.C. Circuit's instructions and the Court has more than adequate support to make its required finding on segregability.  *See, e.g.*, *Thelen v. United States Dep't of Justice*, Civ. No. 15-0102 (BAH), 2016 WL 1048772, at *9 (D.D.C. Mar. 14, 2016) ("On review of all of the defendant's supporting declarations and Vaughn Indices, the Court concludes that the defendant has adequately specified 'which portions of the document[s] are disclosable and which are . . . exempt.'" (quoting *Vaughn v. Rosen*, 484 F.2d 820, 827 (D.C. Cir. 1973)).  Therefore, because all segregable information has been released, Defendant is entitled to judgment as a matter of law.

### III.   <u>CONCLUSION</u>

For the foregoing reasons and for those set forth in its motion for summary judgment, Defendant respectfully requests that the Court enter judgment in its favor and deny Plaintiff's cross-motion.  A proposed order is attached.


Dated: June 30, 2016
Washington, DC

Respectfully submitted,

CHANNING D. PHILLIPS, D.C. Bar #415793
United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By: _____/s/_____
      WYNNE P. KELLY
      Assistant United States Attorney
      555 4th Street, NW
      Washington, DC 20530
      (202) 252-2545
      wynne.kelly@usdoj.gov

*Attorneys for Defendant*