UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, ) ) ) ) Plaintiff, ) ) ) v. ) ) FEDERAL BUREAU OF ) INVESTIGATION, ) ) Defendant. ) ) | Civil Action No. 14-1311 (APM) |

**PLAINTIFF'S REPLY IN SUPPORT OF THE CROSS-MOTION FOR SUMMARY JUDGMENT**

Plaintiff Electronic Privacy Information Center ("EPIC") submits this Reply in support of the Cross-motion for Summary Judgment. The defendant Federal Bureau of Investigation ("FBI") has failed to justify the agency's Exemption 7(E) claims, establish that the FBI conducted an adequate search, or show that the agency has released all segregable portions of withheld documents. The Court should grant EPIC's Cross Motion for Summary Judgment.

**ARGUMENT**

The FBI in its opposition and reply has failed entirely to respond to the points raised in EPIC's cross motion and opposition, has failed to address or even refer to any of the cases cited by EPIC, and has failed to provide this Court with any new arguments or facts beyond what was included in the original motion for summary judgment. The Court should accordingly treat all the points made in EPIC's cross motion and opposition as

conceded, and should grant EPIC's motion for summary judgment. The few new cases cited by the FBI are not relevant to this case and are not discussed or explained.

The FBI also ignores the fundamental issue in this case—that the documents requested by EPIC are Privacy Impact Assessments ("PIAs") and Privacy Threshold Analysis ("PTA") documents, which are oversight reports that the agency is required to produce under the E-government Act of 2002 and are intended to be made public. E-Government Act of 2002, Pub. L. No. 107-347, § 208(b)(1)(B)(iii). EPIC discussed at length in its cross motion and opposition why these documents are of significant interest to the public, how they are compiled for oversight—not "law enforcement" purposes, and why their release does not qualify for withholding under Exemption 7(E). *See* Pl.'s Cross-Mot. for Summ. J. and Opp'n to Def.'s Mot. for Summ. J. ("Pl.'s Mot.") 10–17, ECF No 28-1. The FBI response, which is less than two pages, does not address any of the evidence or authorities that EPIC presented, and merely restates the conclusory portions of the Hardy Declaration. Def.'s Opp'n to Pl.'s Cross-Mot. for Summ. J and Reply ("Def.'s Opp'n") 12–14, ECF No. 30. The FBI similarly ignores the detailed points that EPIC made in response to the agency's Exemption 7(E) claim, Pl.'s Mot. 17–25, and again simply restates the Hardy Declaration, Def.'s Opp'n 14–21.

The FBI does not address any of the issues raised in EPIC's cross motion and opposition regarding search adequacy—failure to provide search terms, failure to provide details of the targeted search, and failure to establish that all likely files were searched, Pl.'s Mot. 27—instead the agency again restates sections of the Hardy Declaration and cites cases that it already provided in the motion for summary judgment, Def.'s Opp'n

11–12. The court should accordingly find that the agency failed to conduct a reasonable search.

## I. The FBI has failed to demonstrate that Exemption 7(E) applies to the responsive records.

### A. The FBI has conceded that privacy impact assessments were compiled for oversight purposes, not law enforcement purposes.

An agency's privacy oversight reviews are compiled to facilitate compliance with privacy and transparency laws, not for "law enforcement purposes." *See* Pl.'s Mot. 10–17. The FBI has not cited to a single case that holds that PIAs and PTAs are compiled for law enforcement purposes. An agency invoking Exemption 7(E) must first satisfy Exemption 7's threshold requirement and show that the records were "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982) (describing the Exemption 7 threshold requirement). "[T]he term 'compiled' in Exemption 7 requires that a document be created, gathered, or used by an agency for law enforcement purposes at some time before the agency invokes the exemption." *Pub. Employees for Envtl. Responsibility v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 203 (D.C. Cir. 2014) ("PEER").

The FBI focuses incorrectly on the agency's broader role within the Department of Justice ("DOJ"), rather than the purpose for which the records at issue in this case were compiled. Def.'s Opp'n at 13. It is true that a court may grant a certain level of deference to an agency's "law enforcement purposes" claim in cases where the documents concern that agency's law enforcement function. *See Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002). But the D.C. Circuit has stressed that the focus of the

Exemption 7 threshold test is on the purpose for which "the document in question was compiled." PEER, 740 F.3d at 203.

EPIC has provided an extensive explanation of the purpose and role of PIAs and PTAs, based on the law and the agency's own statements. Pl.'s Mot. 2–3, 10–17. The FBI has offered no alternative view as to the purpose for which the reports were compiled. The agency simply fails to rebut the plain fact that the documents at issue were compiled for a non-law enforcement purpose established by statute: ensuring agency compliance with federal law. Given that the agency has provided no evidence and has not rebutted the evidence that EPIC submitted, the Court should treat the point as conceded and grant EPIC's motion with regards to the agency's Exemption 7 claims.

But even if the Court constructs an argument on the agency's behalf, it should nevertheless grant EPIC's motion. In order to meet the Exemption 7 threshold test, the FBI must show that there is a rational nexus between the investigatory activity (in this case the compiling of PIAs and PTAs) and the agency's law enforcement duties. *Keys v. DOJ*, 830 F.2d 337, 340 (D.C. Cir. 1987). The FBI states that "the pertinent records were compiled and or created in furtherance of FBI's law enforcement, national security, and intelligence missions." Def.'s Opp'n. 13. This statement is not only conclusory but fails to establish any nexus with actual investigatory activities that would rebut the clear evidence that the reports were compiled for oversight purposes as directed by Congress.

The agency's few scant and unexplained case references, Def.'s Opp'n 14, fare no better as none of these cases concern the withholding of PIAs or PTAs created for oversight purposes. In *Abdelfattah v. U.S. Imm. & Customs Enforcement*, the court notes in its analysis of whether the Exemption 7 threshold is met that ICE declared the records

at issue were "compiled by ICE in the context of its investigation into suspected violations of federal immigrations or customs law." 851 F. Supp. 2d 141, 145 (D.D.C. 2012). In this case, the FBI has only given a general statement about the records being compiled in furtherance of the FBI's law enforcement mission. Def.'s Opp'n Br. at 13. In *Isiwele v. U.S. Dep't of Health & Human Services*, the court concluded that the records at issue were compiled for law enforcement purposes because the records were a part of a law enforcement database "used to record cases of suspected or identified immigration fraud." 85 F. Supp. 3d 337, 358 (D.D.C. 2015) (internal quotations omitted). The plaintiff in *Isiwele* did not dispute whether the records where compiled for law enforcement purposes. *Id.* In *Gosen v. U.S. Citizenship & Immigration Services*, the documents at issue were "involved with the enforcement of a statute or regulation within [USCIS's] authority and ... were compiled for adjudicative or enforcement purposes[.]" 75 F. Supp. 3d 279, 289 (D.D.C. 2014).

None of these cases are relevant to the issue here. PIAs and PTAs are not compiled as part of an investigation or even included in the agency's investigatory databases, Def.'s Opp'n 5. The documents are strictly created for privacy assessment purposes.

      **B. The FBI has failed to establish that disclosure of privacy assessments would risk circumvention of the law.**

The FBI opposition simply parrots the Hardy Declaration and the agency's own motion for summary judgment. The agency does not address, and therefore concedes, EPIC's points that the FBI's categorical withholdings do not meet the definition of "techniques," "procedures," or "guidelines" and thus does not satisfy Exemption 7(E). *See* Pl.'s Mot. 18–21. The Court must rule in EPIC's favor if it finds that the agency has

not shown that disclosure of these records would reveal techniques, procedures, or guidelines for law enforcement investigations.

Rather than respond to the cases or statutory definitions that EPIC relied upon, the FBI simply asserts that the privacy assessments are "technical specifications, procedures, or guidelines" for the purposes of 7(E), but they clearly are not. PIAs and PTAs are oversight reports, which might include generalized summaries of FBI systems and databases in some cases, or the names and the identities of agency units and contractors. The documents at issue may refer to techniques, procedures, or guidelines, but the reports themselves could not be characterized in this way. Pl.'s Mot. 18–21. "Exemption 7(E) is not concerned with mere 'logistical details.'" *Clemente v. FBI*, 741 F. Supp. 2d 64, 88 (D.D.C. 2010). Furthermore, the FBI ignores entirely recent decisions that are directly on point.

In *EPIC v. Drug Enforcement Admin.*, ___ F. Supp. 3d ___, No. 14-317, 2016 WL 3557007 (D.D.C. June 24, 2016), the court rejected the government's argument that the "identity of the private corporations assisting with" a surveillance program could logically risk circumvention of the law or that the disclosure of "facility locations" could, without more, satisfy the requirements of Exemption 7(E). Rather than respond to this point or the arguments made in EPIC's cross motion and opposition, the FBI simply restates what it already said in the motion for summary judgment. Def.'s Opp'n 19–20.

In claiming Exemption 7(E), the FBI repeatedly refers to "detailed information" in the privacy assessments, Def.'s Opp'n 17-18, 21, but provides no evidence to support the claim that these reports contain such detail. The PTAs produced to EPIC commonly state to provide a "general description" of the system or project. *See, e.g.*, Pl.'s Mot., Ex.

6

1, Bates pages EPIC-173, 219, 565, 589, and 645. Further, the PIA template provided by the DOJ's Office of Privacy and Civil Liberties informs agencies to "provide a non-technical overall description of the system." DOJ, *Privacy Impact Assessment Template* (May 2015).[1] It is simply implausible that privacy assessments designed to be released to the public provide the kind of detail necessary to create a "virtual playbook on how to evade detection from being surveyed by these sensitive internal FBI information collection systems, networks, infrastructure, and analytical application tools, used and employed in national security and criminal investigations, thus enhancing their ability to avoid detection, concealing their identities, or evading apprehension." Def.'s Opp'n 17. The agency has done nothing more in its opposition than recite the same boilerplate language from the Hardy Declaration.

Furthermore, as EPIC has already explained, *Blackwell* and *Soghoian* are inapposite, Pl.'s Mot. 20–21, there is no need to repeat those points here. The only new case that the FBI cites is *Tracy v. Department of Justice*, ___ F. Supp. 3d ___, No. 15-655-RDM, 2016 WL 3248185 (D.D.C. June 28, 2016), but that case does not support the point that FBI asserts. Specifically, the FBI argues that the information at issue in *Tracy* is "less sensitive," Def.'s Mot. 16, despite the fact that the court in *Tracy* made no findings as to the sensitivity of that information. Without further explanation, it is not clear how or why the contents of privacy assessments, which are intended to be made public, are sensitive at all and would risk circumvention of the law if disclosed.

---

[1] https://www.justice.gov/file/dojpiatemplatemay2015pdf/download.

## II. The FBI has failed to provide sufficient detail to show that the agency has conducted an adequate search for responsive records.

The FBI relies entirely on the Hardy Declaration to support the reasonableness of the search conducted in this case, Def's Opp'n 11–12, despite the fact that there are serious deficiencies in the declaration and a lack of detail regarding the agency's search methodology. "In adjudicating the adequacy of the agency's identification and retrieval efforts, the trial court may be warranted in relying upon agency affidavits," provided they are "relatively detailed," "nonconclusory," and "submitted in good faith." *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (internal quotation marks and brackets omitted). This analysis is divided into two components: "first, the selection of offices and files to search, and second, the search of those selected locations." *Am. Immigration Council v. DHS*, 21 F. Supp. 3d 60, 71 (D.D.C. 2014). If "the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper." *Id.* at 70.

### A. The Hardy declaration insufficiently describes the scope and methods of the searches conducted in the PCLU.

The FBI continues to rely on the Hardy declaration, which EPIC has already argued is conclusory and not reasonably detailed. Pl.'s Mot. 27. This Court has found that a declaration is not "reasonably detailed" when it only provides the office to which the targeted search was directed, but does not specify what search terms were used. *Defs. of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 91-92 (D.D.C. 2009). Declarations that are not reasonably detailed, and do not set forth "the search terms and the type of search performed" are insufficient to satisfy an agency's burden. *Id.* at 91. In *Defenders of Wildlife*, the declarations submitted by the agency were deficient because the defendants gave "no details about the scope or methods of the searches conducted" within the named offices, "whether searches were made in these offices' paper files,

electronic files, or both . . . .", nor did the defendant provide "any details about the offices' filing methods or the search terms used." *Id.* at 92.

Like the defendants in *Defenders of Wildlife*, the FBI only specified the office where the search was directed, but failed to provide details on the scope of the method of searches conducted, whether the searches were made in electronic or paper files, or both, any details on the filing method, and what search terms were used. The declaration provides that the FBI would not use its "standard search protocol" of the Central Records System ("CRS"), that a targeted search would be used instead, and the targeted search was directed to the Privacy and Civil Liberties Unit ("PCLU"). Def.'s Opp'n Br. 5. The FBI fails to justify why it did not conduct a targeted search of other offices, and fails to provide necessary details of the search of the selected location.

The Hardy declaration is unlike the "reasonably detailed" affidavit in *Pinson v. DOJ*, No. CV 12-1872 (RC), 2016 WL 29245, at *18 (D.D.C. Jan. 4, 2016). In *Pinson*, the court held that an affidavit provides a "reasonably detailed" account of the scope of a search when the declaration "describe[s] to whom the request was forwarded, which specific databases were searched and how those databases store information, how that information is searchable, and, where appropriate, identify the specific search terms used to locate documents with respect to each . . . request." *Id*.

### B. The FBI has failed to establish that it searched all files likely to contain responsive documents.

While the FBI states that the adequacy of a search does not depend on "whether additional potentially responsive documents exist," *Lardner v. FBI,* 875 F.Supp.2d 49, 55 (D.D.C.2012), the FBI has failed to confirm it searched "all files likely to contain responsive materials," *Am. Immigration Council,* 21 F. Supp. 3d at 72.

9

The FBI only addresses the adequacy of the search as a qualified statement. Mr. Hardy states, "there is no indication from the *information located as a result of the targeted search efforts* . . . to conclude that responsive material would reside in any other FBI system or location." Hardy Decl. ¶¶ 22–23 (emphasis added). The Hardy declaration fails to assert that all locations likely to contain responsive documents were searched. *Id.* "In the absence of an affidavit containing the specific assertion that [defendant] searched all files likely to contain responsive documents—or, the contrapositive, that the files . . . not search[ed] were not likely to contain responsive documents—the Court cannot conclude that Defendants' search was adequate." *Am. Immigration Council* 21 F. Supp. 3d at 73. Because the FBI failed to assert that it searched all files likely to contain responsive documents, the search was inadequate.

### III. The FBI has failed to provide sufficient detail to show that the agency has disclosed all reasonably segregable portions.

The burden is on the agency to "provide a detailed justification for its non-segregability." *Johnson v. EOUSA*, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation marks omitted). This includes "a statement of [the government's] reasons," and a "descri[ption of] what proportion of the information in a document is non-exempt and how that material is dispersed throughout the document." *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977). The FBI has failed to meet its burden.

The FBI does not describe the proportion of non-exempt information or how the non-exempt information is dispersed throughout the withheld documents. *See* Hardy Decl. ¶¶ 42-44.[2] The FBI has only provided vague statements about the withheld non-

---

[2] The FBI correctly acknowledges in Footnote 7 that it incorrectly stated the scope of its (b)(7)(E)-2 claims in the motion for summary judgment. Def.'s Opp'n 18, n.7 But EPIC

exempt portions being "inextricably intertwined." The FBI has barely done more than claim that a segregability review was conducted, which is not enough. *See Oglesby v. United States Dep't of the Army*, 79 F.3d 1172, 1180 (D.C. Cir. 1996). "While there is no set form for these submissions, the agency should disclose as much information as possible without thwarting the exemption's purpose." *Sciacca v. FBI*, 23 F. Supp. 3d 17, 30 (D.D.C. 2014) (internal quotations marks and citations omitted). The FBI declaration is simply insufficient to justify the Exemption 7(E) withholdings.

## CONCLUSION

For the foregoing reasons, the Court should deny the FBI's Motion for Summary Judgment and grant EPIC's Cross-Motion for Summary Judgment.

Dated: July 29, 2016

Respectfully Submitted,

MARC ROTENBERG, D.C. BAR # 422825
EPIC President

ALAN BUTLER, D.C. BAR # 1012128
EPIC Senior Counsel

  /s/ Jeramie D. Scott
JERAMIE D. SCOTT, D.C. BAR # 1025909
Electronic Privacy Information Center
1718 Connecticut Ave. NW, Suite 200
Washington, DC 20009
(202) 483-1140
jscott@epic.org

*Counsel for Plaintiff*

---

respectfully disagrees with the agency's statement that it has not withheld 4 pages in full under (b)(7)(E)-2. Those pages are 839–41 and 2005.